Stephen E. Goldman (*pro hac vice to be sought*)
E-Mail: sgoldman@rc.com
Wystan M. Ackerman (*pro hac vice to be sought*)
E-Mail: wackerman@rc.com
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Telephone: 860.275.8200
Facsimile: 860.275.8299

Andrew B. Downs, SBN 111435
E-mail:andy.downs@bullivant.com
Linda B. Oliver, SBN 166720
E-mail:linda.oliver@bullivant.com
BULLIVANT HOUSER BAILEY PC
101 Montgomery Street, Suite 2600
San Francisco, CA 94104
Telephone: 415.352.2700
Facsimile: 415.352.2701

Attorneys for Defendant Travelers Casualty
Insurance Company of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MUDPIE, INC., | Case No.: 4:20-cv-03213-JST |
| Plaintiff, | **DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | |
| Defendant. | Date:  July 8, 2020<br>Time: 2:00 p.m.<br>Courtroom 6, Oakland |

TO: PLAINTIFF AND ITS ATTORNEYS:

PLEASE TAKE NOTICE that on July 8, 2020 at 2:00 p.m. or as soon thereafter as this

matter may be heard, before the Hon. Jon S. Tigar, United States Courthouse, Courtroom 6,

1301 Clay Street, Oakland, California, defendant Travelers Casualty Insurance Company of

America ("Travelers") will move and does hereby move to dismiss this action with prejudice

pursuant to F.R.Civ.P. 12(b)(6).

– 1 –

As a matter of law, the Complaint fails to allege a cause of action upon which relief can be granted. In its Complaint, Plaintiff seeks coverage under the Civil Authority, Business Income and Extra Expense provisions of a property insurance policy issued by Travelers.  The bases for this motion, more fully stated in the memorandum of points and authorities, are:

- Plaintiff cannot establish entitlement to Civil Authority coverage as a matter of law because, as the Complaint concedes, Compl. ¶ 30, the policy contains a virus exclusion -- expressly applicable to the Civil Authority coverage -- that excludes coverage for *any* "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Kupec Decl. Ex. 1, at 217.

- In addition, Plaintiff cannot establish entitlement to Civil Authority coverage as a matter of law because Plaintiff has not alleged (and cannot allege) facts capable of establishing an express prerequisite to such coverage, namely, that the governmental orders at issue were "due to direct physical loss of or damage to property."  As the Complaint concedes, the governmental orders were issued "to control the spread of COVID-19"; they were not issued due to any property damage. Compl. ¶ 24; RJN Exs. A, B.

- Plaintiff cannot establish entitlement to Business Income coverage or Extra Expense coverage as a matter of law because Plaintiff has not alleged (and cannot allege) any facts demonstrating that Plaintiff suffered a "direct physical loss of or damage to" insured property, an express prerequisite to such coverages.

- In addition, Plaintiff cannot establish entitlement to Business Income and Extra Expense coverage as a matter of law because, like Civil Authority coverage, the Business Income and Extra Expense coverages do not apply to losses caused by or resulting from a virus.

- Without a plausible claim for coverage under the Policy, Plaintiffs' causes of action for declaratory judgment, breach of contract and breach of the implied covenant of good faith and fair dealing all fail to state a claim. And Plaintiff's

putative class allegations cannot survive because Plaintiff's individual claims fail to state a claim.

This motion is based upon this notice, the following memorandum in support, the declaration of Kenneth Kupec, Travelers' Request for Judicial Notice and the exhibits to it, the Complaint and other papers on file, and such other evidence and argument as may be presented.

DATED:  June 3, 2020

BULLIVANT HOUSER BAILEY PC


By  */s/ Andrew B. Downs*
Andrew B. Downs
Linda B. Oliver

Stephen E. Goldman
(*pro hac vice to be sought*)
Wystan M. Ackerman
(*pro hac vice to be sought*)
ROBINSON & COLE LLP

Attorneys for Defendant Travelers Casualty Insurance Company of America

# CONTENTS

I. INTRODUCTION................................................................................................1

II. PROCEDURAL HISTORY AND ALLEGED FACTS ........................................2

   A. This Lawsuit ................................................................................................2

   B. Contract Language At Issue ......................................................................4

      1. The Relevant Coverage Provisions ...................................................4

      2. The Virus Exclusion..........................................................................5

III. LEGAL STANDARD ........................................................................................5

IV. ARGUMENT .....................................................................................................7

   A. Mudpie Cannot Establish Entitlement to Civil Authority Coverage...........7

      1. As a Matter of Law Plaintiff Cannot Establish Entitlement to Civil Authority Coverage Because Such Coverage Does Not Apply to Losses Caused by or Resulting From a Virus ................................................................8

      2. As a Matter of Law, Plaintiff Is Not Entitled to Civil Authority Coverage Because Plaintiff Has Not Alleged Facts Capable of Establishing That the Orders Were "Due to Direct Physical Loss of or Damage to Property"........10

   B. For Similar Reasons, Plaintiff Cannot Establish Entitlement to Business Income or Extra Expense Coverage ...........................................................12

      1. As a Matter of Law, Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because Plaintiff Has Not Alleged Facts Capable of Establishing "Direct Physical Loss of or Damage to Property at [Plaintiff's] Premises"....................................................................................12

      2. As a Matter of Law, Plaintiff Cannot Establish Entitlement to Business Income and Extra Expense Coverages Because Those Coverages Do Not Apply to Losses Caused by or Resulting from a Virus .................................15

   C. Dismissal of the First Cause of Action Is Proper Because Plaintiff Is Not Entitled to Its Requested Declaration ..........................................................15

– i –

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

D.  Dismissal of the Second Cause of Action for Breach of Contract is Proper

Because Mudpie Fails to Allege Any Entitlement to Coverage ................................16

E.  Dismissal of the Third Cause of Action for Breach of the Implied Covenant

of Good Faith and Fair Dealing Is Proper Because Mudpie Is Not Entitled to

Coverage as a Matter of Law ...................................................................................16

V.  CONCLUSION ...................................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*1231 Euclid Homeowners Assn. v. State Farm Fire & Cas. Co.*,
    135 Cal. App. 4th 1008 (2006) ............................................................................. 16

5

*AFLAC Inc. v. Chubb & Sons, Inc.*,
    581 S.E.2d 317 (Ga. App. 2003) .......................................................................... 13

6

7

*Atlas Assurance Co. v. McCombs Corp.*,
    146 Cal. App. 3d 135 (1983) .............................................................................. 8, 9

8

9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................... 5

10

*Boyle v. Madigan*,
    492 F.2d 1180 (9th Cir. 1974) ............................................................................ 18

11

12

*Boza v. U.S. Bank Nat. Ass'n*,
    No. LA CV 12-06993 JAK, 2013 WL 5943160 (C.D. Cal. Oct. 28, 2013) .......... 17

13

*Brown v. Mid-Century Ins. Co.*
    215 Cal. App. 4th 841 (2013) .............................................................................. 17

14

15

*Buschman v. Anesthesia Bus. Consultants, LLC*,
    42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014) ........................................................ 16

16

17

*Camp Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co.*,
    150 F. Supp. 3d 1186, 1189 (E.D. Cal. 2015) ...................................................... 3

18

19

*CDF Firefighters v. Maldonado*,
    158 Cal.App.4th 1226 (2008) .............................................................................. 16

20

*Certain Underwriters at Lloyd's London v. Creagh*,
    Civ. A. No. 12-571, 2013 WL 3213345 (E.D. Pa. June 26, 2013), *aff'd*, 563
    Fed. App'x 209 (3d Cir. 2014) ............................................................................. 9

21

22

*Certain Underwriters at Lloyd's of London v. Superior Court*,
    24 Cal. 4th 945 (2001) .......................................................................................... 6

23

24

*Clarke v. State Farm Fla. Ins.*,
    123 So. 3d 583 (Fla. Dist. Ct. App. 2012) ........................................................... 9

25

26

*Cont'l Cas. Co. v. City of Richmond*,
    763 F.2d 1076 (9th Cir. 1985) .............................................................................. 6

27

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
    636 F.3d 683 (5th Cir. 2011) .......................................................................... 10, 11

28

– iii –

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

*Doe v. State Farm Fire & Cas. Co.*,
  No. 2015-0136, 2015 WL 11083311 (N.H. Sept. 21, 2015) .................................................. 9

*Fireman's Fund Ins. Co. v. Superior Court*,
  65 Cal. App. 4th 1205 (Ct. App. 1997) ............................................................................... 8

*Herr v. Forghani*,
  161 Wash. App. 1037, 2011 WL 1833829 (2011) (unpublished ) ....................................... 14

*In re: COVID-19 Business Interruption Protection Insurance Litigation*,
  MDL No. 2942 ................................................................................................................. 1

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
  No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007) ..................... 14

*Kamath v. Robert Bosch LLC*,
  No. 2:13-CV-08540-CAS, 2014 WL 2916570 (C.D. Cal. June 26, 2014) ........................... 18

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*,
  No. 4:19-CV-00693-SAL, 2020 WL 886120 (D.S.C. Feb. 24, 2020) .................................. 11

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ........................................................................................... 3

*Lambi v. Am. Family Mut. Ins. Co.*,
  498 F. App'x 655 (8th Cir. 2013) ....................................................................................... 9

*Lawrence v. Zilog, Inc.*,
  242 F.3d 382 (9th Cir. 2000) ........................................................................................... 18

*Lopez v. Smith*,
  203 F.3d 1122 (9th Cir. 2000) ........................................................................................... 6

*Love v. Fire Ins. Exch.*,
  221 Cal. App. 3d 1136 (1990) ................................................................................... 2, 16, 17

*Marzec v. California Pub. Employees Ret. Sys.*,
  236 Cal. App. 4th 889 (2015) ...................................................................................... 7, 9, 10

*Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*,
  No. CV 06-4766 CAS, 2008 WL 3009889 (C.D. Cal. Mar. 20, 2008) ................................ 13

*Minich v. Allstate Ins. Co.*
  193 Cal. App. 4th 477 (2011) ........................................................................................... 17

*Moss v. Infinity Ins. Co.*,
  197 F. Supp. 3d 1191, 1201 (N.D. Cal 2016) .................................................................... 16

*Moss v. Infinity Ins. Co.*,
  No. 15-CV-03456-JSC, 2015 WL 7351395 (N.D. Cal. Nov. 20, 2015) ............................... 17

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .................................................................................. 6

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
    187 Cal. App. 4th 766 (2010) ........................................................................... 13, 14

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001) .................................................................................. 5

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
    No. 2:12-CV-00245-WCO, 2014 WL 12480022 (N.D. Ga. May 23, 2014) ........................ 14

*O'Keefe v. Allstate Indem. Co.*,
    953 F. Supp. 2d 1111 (S.D. Cal. 2013) ................................................................... 17

*Palmer v. Truck Ins. Exch.*,
    21 Cal. 4th 1109 (1999) ........................................................................... 6, 8, 14

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
    400 F.3d 613 (8th Cir. 2005) ................................................................................ 14

*R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n*,
    No. cv-7942-VAP, 2008 WL 11336180 (C.D. Cal. Apr. 10, 2008), *aff'm sub*
    *nom. R.L.H. ex rel. Hunter v. United Servs. Auto. Ass'n*, 327 F. App'x 714
    (9th Cir. 2009) ................................................................................................ 16

*Roug v. Ohio Sec. Ins. Co.*,
    182 Cal. App. 3d 1030 (1986) ................................................................................ 6

*Safeco Ins. Co. v. Gilstrap*,
    141 Cal. App. 3d 524 (1983) ................................................................................. 6

*Sigma Fin. Corp. v. Gotham Ins. Co.*,
    No. CV 15-01531 AGD, 2017 WL 9511732 (C.D. Cal. Mar . 31, 2017) ........................... 17

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
    Civ. A. No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) .......................... 10, 11

*Southern Hospitality, Inc. v. Zurich American Ins.*,
    393 F.3d 1137 (10th Cir. 2004) .............................................................................. 7

*Syufy Enters. v. Home Ins. Co. of Ind.*,
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .......................................................................................... 3

*Turner v. City & Cty. of San Francisco*,
    788 F.3d 1206 (9th Cir. 2015) ................................................................................ 6

*United Air Lines, Inc. v. Ins. Co. of State of Pa.*,
    439 F.3d 128 (2d Cir. 2006)................................................................................11

*Waller v. Truck Ins. Exch., Inc.*
    11 Cal. 4th 1 (1995)........................................................................................17

*Ward General Ins. Services, Inc. v. Employers Fire Ins. Co.*,
    114 Cal. App. 4th 548 (2003)..........................................................................13

*Welles v. Turner Entm't Co.*,
    503 F.3d 728 (9th Cir. 2007).............................................................................6

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    255 F. Supp. 3d 970 (N.D. Cal. 2017) ..............................................................6

**STATUTES**

28 U.S.C. § 1407 .................................................................................................1

Cal. Civ. Code § 1638 .....................................................................................6, 8

Cal. Civ. Code § 1646 .........................................................................................6

**OTHER AUTHORITIES**

10A COUCH ON INSURANCE § 148:46.......................................................................13

Federal Rule of Civil Procedure 12(b)(6) .......................................................5, 18

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.      INTRODUCTION**

3       The COVID-19 pandemic has affected the public and most businesses throughout the

4    country in unprecedented ways.  But these challenging and unfortunate circumstances do not

5    create insurance coverage for losses that fall outside the terms of a policyholder's insurance

6    contract.

7       Plaintiff ("Plaintiff" or "Mudpie") asks this Court to declare that Mudpie is entitled to

8    insurance coverage for the retailer's claimed business income losses allegedly caused by the

9    "Stay at Home" order that Governor Gavin Newsom issued to combat the spread of COVID-19

10   (the "Stay at Home Order").[1]  But Mudpie disregards the material terms of its Travelers Casualty

11   Insurance Company of America ("Travelers") insurance policy—foremost among them an

12   explicit exclusion of *any* type of coverage, including Civil Authority, Business Income and

13   Extra Expense coverages, for *any* "loss or damage caused by or resulting from any virus,

14   bacterium or other microorganism that induces or is capable of inducing physical distress,

15   illness or disease."  Plaintiff concedes in its Complaint that the Policy "excludes loss 'caused by

16   or resulting from' virus or bacteria," Compl. ¶ 30, and fails to offer any explanation for why the

17   exclusion does not bar coverage as a matter of law.

18       The case-dispositive virus exclusion is not the only reason Plaintiff's Complaint fails as

19   a matter of law.  Rather, Plaintiff has not and cannot plead facts necessary to establish that it is

20   entitled to Civil Authority, Business Income or Extra Expense coverage.

21       As to coverage under the Civil Authority provision, Plaintiff fails to allege facts showing

22   that the Stay at Home Order was "due to direct physical loss of or damage to property" within

23   100 miles of the insured premises, a prerequisite for Civil Authority coverage.  To the contrary,

24

25   _____

26   [1] Similar lawsuits seeking property insurance coverage for business income losses arising from
     COVID-19 have been filed in various other federal and state courts across the country. Two
27   motions for transfer and coordination or consolidation under 28 U.S.C. § 1407 have been filed
     with the Judicial Panel on Multidistrict Litigation ("JPML") in *In re: COVID-19 Business
28   Interruption Protection Insurance Litigation*, MDL No. 2942. Travelers intends to oppose the
     motions for transfer and coordination or consolidation. The JPML hearing on the motions is
     scheduled for July 30, 2020.

1  Plaintiff expressly concedes that the order was issued to control the spread of COVID-19.

2  Compl. ¶ 26

3      As to coverage under the Policy's Business Income and Extra Expense provisions,

4  Plaintiff fails to allege facts demonstrating that it suffered a "direct physical loss of or damage

5  to [the insured] property," an express prerequisite for both the Business Income and Extra

6  Expense coverages. Plaintiff's allegations that a restriction on the use of its premises constitutes

7  "direct physical loss" are contrary to the plain meaning of the Policy's terms and controlling

8  California appellate decisions.

9      And, again, even if Plaintiff could have alleged the above factual prerequisites for Civil

10 Authority, Business Income and Extra Expenses coverages, Plaintiff's insurance claim—which

11 results from the Coronavirus—would still be *expressly excluded* by the virus exclusion.[2]  The

12 Complaint should be dismissed with prejudice because, as a matter of law, Plaintiff cannot plead

13 an entitlement to coverage under its contract with Travelers.

14 **II.    PROCEDURAL HISTORY AND ALLEGED FACTS**

15      **A.    This Lawsuit**

16      Plaintiff commenced this action against Travelers on May 11, 2020.  Plaintiff operates a

17 retail store in San Francisco, selling children's clothing, toys and other goods. Compl. ¶ 26.

18 Plaintiff alleges that a Travelers insurance policy number 680-1G147295 (the "Policy") insures

19 losses of "business income with extra expense coverage for the loss, as well as additional 'civil

20 authority' coverage" "caused" by Governor Newsom's "Stay at Home Order" issued "to control

21 the spread of COVID-19," a "global health pandemic" caused by "an outbreak of a novel strain

22 of coronavirus – COVID-19." Compl. ¶¶ 17, 19, 24-25, 27, 30, 60.  The Policy, which is

23

24

25

26   _____
27   [2] Because Mudpie cannot plead facts to establish coverage, its claim for breach of contract and
     its claim for bad faith, both premised on the wrongful denial of coverage, likewise fail as a
     matter of law. "[A]bsent an actual withholding of benefits due, there is no breach of contract
28   and likewise no breach of the insurer's implied covenant."  *Love v. Fire Ins. Exch.*, 221 Cal.
     App. 3d 1136, 1152 n.10 (1990) (internal citation omitted).

1    incorporated by reference into the Complaint, was issued by Travelers. *See* Kupec Decl., Ex. 1

2    ("Policy").[3]

3       According to the Complaint, on March 12, 2020, Governor Newsom issued a "Safer at

4    Home" order (the "Safer at Home" order), instituting social distancing measures "to control the

5    spread of COVID-19." Compl. ¶ 24. The Complaint further alleges that, on March 19, 2020,

6    Governor Newsom issued a Stay at Home order, "requiring retailers to cease in-person services .

7    . . ." Compl. ¶ 25.  The Complaint acknowledges that these orders were "needed to stop the

8    transmission of COVID-19" because, for example, "shops . . . were likely to become hot-spots

9    for local transmission of COVID-19." *Id.* ¶ 22; *see also id.* ¶ 24 (Safer at Home order was

10   intended "to control the spread of COVID-19"). Plaintiff acknowledges that retail "curbside

11   sales or by delivery are now permitted." *Id.* ¶ 25; *see also id.* ¶ 66 (alleging only that "in-person

12   services" are ceased). Plaintiff alleges that Governor Newsom's orders (the "Orders") have

13   "caused direct physical loss of Mudpie's insured property in that the property has been made

14   useless and/or uninhabitable; and its functionality has been severely reduced if not completely

15   or nearly eliminated." Compl. ¶ 27.

16       Plaintiff seeks coverage for "business income with extra expense coverage, as well as

17   additional 'civil authority' coverage."  Compl. ¶ 30; *see also id.* ¶ 60. The Complaint alleges

18   three claims, all arising from an alleged wrongful denial of coverage. Plaintiff seeks a

19   declaratory judgment that "its business income losses are covered and not precluded by

20   exclusions or other limitations in its comprehensive business insurance policy." Compl. ¶ 62.

21   The Complaint also seeks general damages, attorneys' fees and costs related to its allegations of

22   breach of contract and breach of the implied covenant and good faith dealing. Compl. ¶¶ 63-71

23   (breach of contract); *id.* ¶¶ 72-79 (breach of implied covenant); Prayer for Relief.

24

---

25   [3] The Court may properly consider the insurance policy referenced in the complaint, even
26   though it was not physically attached to the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in ruling on a motion to dismiss, a court "must consider the
27   complaint in its entirety, as well as . . . documents incorporated into the complaint by reference"); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also, e.g.*, *Camp*
28   *Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co.*, 150 F. Supp. 3d 1186, 1189 (E.D. Cal. 2015) (insurance policy).

Plaintiff also seeks to certify a class defined as "[a]ll retailers in California that purchased comprehensive business insurance coverage from Defendant which includes coverage for business interruption, filed a claim for lost business income following California's Stay at Home order, and were denied coverage by Defendant." *Id.* ¶ 43.

**B.   Contract Language At Issue**

**1.   The Relevant Coverage Provisions**

Mudpie purchased a Store Pac Policy from Travelers, a type of insurance policy for businesses, such as retailers, which insured Mudpie's business personal property (such as its inventory and equipment) from covered causes of loss, such as a fire or windstorm. In the event of a fire, for example, that requires a suspension of business operations, the Policy would cover a loss of business income or increase in expenses that results from the suspension of operations caused by the fire damage and occurs during the "period of restoration"—while the repairs are being made. The Business Income and Extra Expense coverage provides, in relevant part:

**a.   Business Income**

. . .

(2)   We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".  The "suspension" must be caused by <u>direct physical loss of or damage to property at the described premises</u>.  The loss or damage must be caused by or result from a <u>Covered Cause of Loss</u>. . . . .

. . .

**b.   Extra Expense**

(1)   Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no <u>direct physical loss of or damage to property</u> caused by or resulting from a <u>Covered Cause of Loss</u>.

Policy at 71-72 (underscores added). As highlighted above, key requirements for the Business Income and Extra Expense coverages include both "direct physical loss of or damage to property at the described premises" and a "Covered Cause of Loss."   "Covered Causes of Loss" are "risks of direct physical loss unless the loss is . . . [e]xcluded."  *Id.* at 72-73.

– 4 –

In the provision entitled "Civil Authority," coverage for Business Income and Extra Expense is extended to:

> the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur caused by action of civil authority that prohibits access to the described premises. <u>The civil authority action must be due to direct physical loss of or damage to property</u> at locations, other than described premises, that are within 100 miles of the described premises, <u>caused by or resulting from a Covered Cause of Loss</u>.

Policy at 84 (underscores added). As highlighted above, key requirements for this coverage to apply include that the civil authority action must be "due to direct physical loss of or damage to property," and there must be "a Covered Cause of Loss" (i.e., a cause that is not excluded from coverage).

### 2.    The Virus Exclusion

The Policy contains an endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which "applies to all coverage under all forms and endorsements that comprise" the Commercial Property Coverage Part of the Policy "including but not limited to forms or endorsements that cover . . . <u>business income, extra expense . . . or action of civil authority</u>."  (Policy at 217) (underscore added).  The exclusion concisely states in plain terms that:

> <u>We will not pay for loss or damage caused by or resulting from any virus</u>, bacterium or other microorganism <u>that induces or is capable of inducing physical distress, illness or disease</u>.

(*Id.* (underscores added).)

As demonstrated below, Plaintiff's factual allegations cannot satisfy the prerequisites for coverage under the Civil Authority, Business Income and Extra Expense coverages, and, in any event, the virus exclusion clearly and unambiguously precludes coverage.

## III.    LEGAL STANDARD

A complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) when "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint must "state

– 5 –

1   a claim to relief that is plausible on its face").  Although "a court must take all allegations of

2   material fact as true and construe them in the light most favorable to the nonmoving party,"

3   *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015), dismissal is

4   warranted when "the complaint [can]not be saved by any amendment," *Moss v. U.S. Secret

5   Serv.*, 572 F.3d 962, 972 (9th Cir. 2009).  If a complaint fails to state a plausible claim, a district

6   court should grant leave to amend "unless it determines that the pleading could not possibly be

7   cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en

8   banc) (citation omitted).

9        Under California law,[4] the terms of an insurance policy must be given their "ordinary

10  and popular sense," and if the policy language is "clear and explicit," it governs. *Palmer v.

11  Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999); Cal. Civ. Code § 1638 ("The language of a

12  contract is to govern its interpretation, if the language is clear and explicit, and does not involve

13  an absurdity."). Indeed, an "insurance policy is but a contract, and, like all other contracts it

14  must be construed from the language used; when the terms are plain and unambiguous, it is the

15  duty of courts to enforce the agreement." *Roug v. Ohio Sec. Ins. Co.*,  182 Cal. App. 3d 1030,

16  1035 (1986). Moreover, courts may not "rewrite a policy to bind the insurer to a risk that it did

17  not contemplate and for which it has not been paid." *Safeco Ins. Co. v. Gilstrap*, 141 Cal. App.

18  3d 524, 533 (1983); *see also Certain Underwriters at Lloyd's of London v. Superior Court*, 24

19  Cal. 4th 945, 968 (2001) ("[W]e do not rewrite any provision of any contract, including the

20  [insurance policy at issue], for any purpose."). If a complaint "place[s] a clearly erroneous

21  construction upon the provisions of the contract," that construction should be rejected and the

22

23

---

24  [4] California law applies here because the parties are before the Court in diversity and thus the
    forum state's choice-of-law principles apply.  *Welles v. Turner Entm't Co.*, 503 F.3d 728, 738

25  (9th Cir. 2007); *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 255 F. Supp. 3d 970,
    973 n.1 (N.D. Cal. 2017).  Under California law, a "contract is to be interpreted according to the

26  law and usage of the place where it is to be performed; or . . . where it is made."  Cal. Civ. Code
    § 1646.  Because the Policy here concerns rights and responsibilities with respect to property in

27  California, California law governs.  *See Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076,
    1079 (9th Cir. 1985).

28

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

1    complaint dismissed.  *Marzec v. California Pub. Employees Ret. Sys.*, 236 Cal. App. 4th 889,

2    909 (2015).

3    **IV.    ARGUMENT**

4           The facts pleaded in the Complaint demonstrate as a matter of law that Mudpie cannot

5    prove an entitlement to Civil Authority, Business Income or Extra Expense coverage.  Indeed,

6    the Complaint seeks coverage for losses that Plaintiff alleges were caused by the Orders issued

7    to combat the spread of a "virus." Yet, as previously described, the Policy contains an explicit

8    exclusion of *any* type of property coverage—including Civil Authority, Business Income and

9    Extra Expense coverages—for *any* "loss or damage caused by or resulting from any virus,

10   bacterium or other microorganism that induces or is capable of inducing physical distress,

11   illness or disease." *See* Compl. ¶ 30 ("The coverage excludes loss 'caused by or resulting from'

12   virus or bacteria.").  For this reason alone, all three of the Complaint's causes of action should

13   be dismissed with prejudice.

14          **A.    Mudpie Cannot Establish Entitlement to Civil Authority Coverage**

15          Civil Authority coverage insures certain business income and extra expense losses

16   "caused by action of civil authority" that are "due to *direct physical loss of or damage to

17   property"* within 100 miles of the insured premises, "*caused by or resulting from a Covered

18   Cause of Loss*." Policy at 84 (emphasis added).  Not only is the virus exclusion fatal, as a

19   matter of law, to Plaintiff's claim for Civil Authority coverage, Plaintiff's allegations fail to

20   satisfy the express prerequisite for Civil Authority coverage that "[t]he civil authority action

21   must be *due to direct physical loss of or damage to property* at locations, other than described

22   premises, that are within 100 miles of the described premises . . ." Policy, at 84 (emphasis

23   added). Because Plaintiff's allegations fail to satisfy either the Covered Cause of Loss or "due to

24   direct physical loss of or damage to property" requirements, dismissal is warranted.[5]

25   _____

26   [5] The Policy also requires that the action of civil authority "prohibit[] access" to the insured
     premises, Policy at 84, and courts uniformly construe this provision to provide coverage only if
     an order "formally forbid[s]" or "prevent[s]" any access to the premises. *See, e.g.*, *Southern

27   Hospitality, Inc. v. Zurich American Ins.*, 393 F.3d 1137, 1140 (10th Cir. 2004). For purposes of
     this motion, Travelers is not seeking adjudication of the issue of whether, or for what period of

28   time, government orders prohibited access to Mudpie's premises (or those of any other retailers
     falling with Plaintiff's proposed class).

1.  **As a Matter of Law Plaintiff Cannot Establish Entitlement to Civil Authority Coverage Because Such Coverage Does Not Apply to Losses Caused by or Resulting From a Virus**

Pursuant to the Policy's express terms, an "action of civil authority" can *only* give rise to coverage if, among other things, the action is taken due to physical loss or damage "*caused by or resulting from a Covered Cause of Loss.*" Policy at 84 (emphasis added).  A virus, however, is an excluded cause of loss, *not* a Covered Cause of Loss.

Plaintiff acknowledges that, following "an outbreak of a novel strain of coronavirus – COVID-19," Governor Newsom issued the Orders "to stop the transmission of COVID-19" and "control the spread of COVID-19."  Compl. ¶¶ 17, 22, 24; *see also id.* ¶ 22 (alleging that "shops" and other "densely occupied spaces, heavily traveled spaces, and frequently visited spaces–were likely to become hot-spots for local transmission of COVID-19" without "population-wide social distancing"). The losses alleged, therefore, are caused by or result from the Coronavirus, a risk of loss that falls squarely within the Policy's broad exclusion of "loss or damage *caused by or resulting from any virus*, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Policy at 217 (emphasis added). And the exclusion expressly applies to Civil Authority coverage.  *Id.* ("The exclusion . . . applies to . . . forms or endorsements that cover business income, extra expense, rental value or *action of civil authority*." (emphasis added)).

California law instructs that when the language of a policy "is clear and explicit," as it is here, the language governs. *Palmer*, *supra* 21 Cal. 4th at 111; Cal. Civ. Code § 1638. California courts evaluating policy exclusions foreclosing coverage for losses "caused by or resulting from" specified noncovered risks have found the provisions unambiguous and applied their plain meaning. *See, e.g.*, *Atlas Assurance Co. v. McCombs Corp.*, 146 Cal. App. 3d 135, 149 (1983); *see also Fireman's Fund Ins. Co. v. Superior Court*, 65 Cal. App. 4th 1205, 1212–13 (Ct. App. 1997) (court "will not strain to create an ambiguity where none or indulge in tortured

1   constructions to divine some theoretical ambiguity in order to find coverage where none was

2   contemplated").[6]

3        There is no question that the plain language of the virus exclusion controls here.  The

4   Complaint specifically (and necessarily) describes "COVID-19" as a "novel strain of

5   coronavirus" and acknowledges that the "virus" "is a global health pandemic based on existing

6   and projected infection and death rates" that spreads "through human-to-human transmission

7   and could be transmitted by asymptomatic carriers."  *Id.* ¶¶ 17-19.  Thus, as alleged by Plaintiff,

8   the Coronavirus is a virus "capable of inducing physical distress, illness or disease," which falls

9   squarely within the scope of the virus exclusion.  Policy at 217.

10        Nonetheless, Plaintiff explicitly requests a declaration that coverage would exist for

11   losses caused by or resulting from the Coronavirus and the Orders issued "to control the spread

12   of COVID-19." Compl. ¶¶ 17-25, 58-60. To grant Plaintiff's request would "strain[] reason"

13   and require "precisely the opposite" of the plain meaning of the virus exclusion, which

14   unambiguously precludes coverage for any loss "caused by or resulting from" a virus.  *See Atlas*

15   *Assurance*, *supra* 146 Cal. App. 3d at 149. Such a result would effectively "rewrite" the Policy

16   and improperly bind Travelers "to a risk that it did not contemplate and for which it has not

17   been paid."  *Id.*; *Marzec*, 236 Cal. App. 4th at 910 ("The fundamental goal of contract

18   interpretation is to give effect to the mutual intention of the parties as it existed at the time they

19   entered into the contract.").

20

_____

21   [6] While few courts have had occasion to construe a virus or microorganism exclusion, courts
have enforced them in accordance with their clear and unambiguous language.  *See, e.g.*,

22   *Certain Underwriters at Lloyd's London v. Creagh*, Civ. A. No. 12-571, 2013 WL 3213345
(E.D. Pa. June 26, 2013) (holding that exclusion for "any loss . . . arising out of or relating to . . .

23   [a] microorganism of any type" precluded coverage for damage to bathroom caused by bacteria
from dead body), *aff'd*, 563 Fed. App'x 209 (3d Cir. 2014); *Doe v. State Farm Fire & Cas. Co.*,

24   No. 2015-0136, 2015 WL 11083311, at *2 (N.H. Sept. 21, 2015) ("We conclude that a
reasonable person in the position of the insured, based upon more than a casual reading of the

25   policy as a whole, would understand the policy to exclude all diseases and viruses that can be
transmitted from one person to another."); *Lambi v. Am. Family Mut. Ins. Co.*, 498 F. App'x

26   655, 656 (8th Cir. 2013) ("the policy excluded bodily injury arising out of the actual or alleged
transmission of a communicable disease, and infecting another with the HIV virus clearly falls

27   within the plain and ordinary meaning of the transmission of a communicable disease"); *Clarke*

28   *v. State Farm Fla. Ins.*, 123 So. 3d 583, 584 (Fla. Dist. Ct. App. 2012) (similar result, finding
exclusion unambiguous).

– 9 –

1    Because Plaintiff's construction of the Policy requires that the virus exclusion be

2 disregarded, it is "clearly erroneous" and unreasonable, and dismissal is warranted on this basis.

3 *Marzec*, 236 Cal. App. 4th at 909 (when the insured "place[s] a clearly erroneous construction

4 upon the provisions of the contract," that construction cannot be accepted and the complaint

5 should be dismissed).

6    **2.    As a Matter of Law, Plaintiff Is Not Entitled to Civil Authority**

7         **Coverage Because Plaintiff Has Not Alleged Facts Capable of**

8         **Establishing That the Orders Were "Due to Direct Physical Loss of**

9         **or Damage to Property"**

10    Plaintiff's allegations also fail to satisfy the Policy's requirement that "[t]he civil

11 authority action must be *due to direct physical loss of or damage to property* at locations, other

12 than described premises, that are within 100 miles of the described premises . . ." Policy, at 84

13 (emphasis added). Courts have consistently held that this policy provision "requires proof of a

14 *causal link* between prior damage and civil authority action." *Dickie Brennan & Co. v.*

15 *Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas*

16 *Med. Clinics, P.A. v. CNA Fin. Corp.*, Civ. A. No. H-06-4041, 2008 WL 450012, at *8 (S.D.

17 Tex. Feb. 15, 2008) (words "due to" in civil authority provision require a "close causal link"

18 between property damage and civil authority order).

19    Here, Plaintiff concedes that the Orders were issued due to the need for "social

20 distancing," "to stop the transmission of COVID-19," because shops and other locations "were

21 likely to become hot-spots for local transmission of COVID-19," and "to control the spread of

22 COVID-19." Compl. ¶¶ 20-24. Plaintiff has not alleged facts capable of establishing that the

23 Orders were issued "due to direct physical loss of or damage to" any property, and they were

24 not. *See* RJN Ex. B, at 1 ("Stay at Home" order citing "rapid[] spread" of COVID-19," need for

25 "preservation of public health and safety" and "to ensure the healthcare delivery system is

26 capable of serving all"); RJN Ex. A, at 1-2 (March 12, 2020 order reciting that "further efforts

27 to control the spread of the virus to reduce and minimize the risk of infection are needed," and

28 that Governor's authority was being exercised "in the interest of public health and safety . . . to

1  ensure adequate facilities exist to address the impacts of COVID-19" and "prevent and mitigate

2  the effects of the COVID-19 pandemic").

3          Plaintiff's inability to plead facts capable of establishing that the Orders were issued

4  "due to . . . loss of or damage to [any] property" is fatal to its claim for Civil Authority

5  coverage.   *See, e.g.*, *Dickie Brennan*, 636 F.3d at 686 (no civil authority coverage because order

6  was not "'due to' physical damage to property"); *United Air Lines, Inc. v. Ins. Co. of State of

7  Pa.*, 439 F.3d 128, 134 (2d Cir. 2006) (civil authority coverage did not apply where "the

8  government's subsequent decision to halt operations at the Airport indefinitely was based on

9  fears of future attacks" on September 11, 2001, not because of property damage to adjacent

10  property).

11          In *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229 (N.D.

12  Cal. Mar. 21, 1995), a judge of this Court addressed civil authority coverage arising from the

13  curfews imposed following the Rodney King riots. In finding that a civil authority provision did

14  not apply, the court explained that "[t]he requisite causal link between damage to adjacent

15  property and denial of access to [the insured's] theater is absent" because "the curfews were

16  imposed to *prevent* 'potential' looting, rioting, and resulting property damage," rather than

17  because of nearby property damage. *Id.* at *2; *see also Kelaher, Connell & Conner, P.C. v.

18  Auto-Owners Ins. Co.*, No. 4:19-CV-00693-SAL, 2020 WL 886120, at *8 (D.S.C. Feb. 24,

19  2020) (finding no coverage under civil authority provision where governor's executive order,

20  "which started the mandatory evacuation, does not reference any 'damage or destruction of

21  property'"); *Paradies Shops*, *supra* 2004 WL 5704715, at *7 (finding no coverage under civil

22  authority provision where order issued after September 11th attacks "was issued as a result of

23  the threat of additional terrorist acts," not due to existing property damage); *South Texas Med.

24  Clinics*, *supra* 2008 WL 450012, at *10 (finding no coverage under civil authority provision

25  where "the mandatory evacuation order for Wharton County was issued due to the anticipated

26  threat of damage to the county and not due to property damage that had occurred in Florida and

27  the Gulf of Mexico").

28

To summarize: as a matter of law, Plaintiff is not entitled to a declaration establishing Civil Authority coverage under the Policy because the Complaint does not and cannot allege (1) physical loss or damage to property "caused by or resulting from a Covered Cause of Loss," in light of the virus exclusion; or (2) that the Orders were "due to direct physical loss of or damage to property[.]"

**B.      For Similar Reasons, Plaintiff Cannot Establish Entitlement to Business Income or Extra Expense Coverage**

Given the Complaint's focus on the Orders, the focal point of the Complaint is Civil Authority coverage. Yet Plaintiff also seeks a declaration that the Policy provides coverage under the Business Income and Extra Expense coverages.  Compl. ¶ 60.

This claim also fails as a matter of law.  As explained below, Plaintiff has not alleged (and cannot allege) any facts demonstrating that there was direct physical loss or damage to property at its premises.  Nor has it alleged, or can it allege, that any purported direct physical loss or damage to property at its premises was caused by a Covered Cause of Loss because the virus exclusion discussed above expressly applies not only to Civil Authority coverage but also to the Business Income and Extra Expense coverages.

**1.      As a Matter of Law, Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage Because Plaintiff Has Not Alleged Facts Capable of Establishing "Direct Physical Loss of or Damage to Property at [Plaintiff's] Premises"**

The Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss."  Policy at 71-72. The Extra Expense coverage similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* at 72.

Plaintiff does not allege that the Coronavirus was in its premises, or that the Coronavirus causes physical loss or damage (and it does not). Rather than alleging that the suspension of

1    Mudpie's operations was "caused by direct physical loss of or damage to" property at its

2    premises, as is required in order for Business Income and Extra Expense coverages to exist,

3    Plaintiff alleges that "*[c]ompliance with [the] orders* has caused direct physical loss of

4    Mudpie's insured property in that the property has been made useless and/or uninhabitable; and

5    its functionality has been severely reduced if not completely or nearly eliminated." Compl. ¶ 27

6    (emphasis added); *see also id.* ¶ 59 ("As a result of [the Stay at Home Order], the covered

7    property of Plaintiff lost some or all of its functionality and/or became useless or uninhabitable

8    . . . ."); *id.* ¶ 67 (similar).

9           To the extent that Plaintiff alleges that the Orders that imposed limitations on the use of

10    its premises constituted "direct physical loss" of property at its premises, those allegations fail

11    as a matter of law. As the California Court of Appeal has held, "[t]hat the loss needs to be

12    'physical,' given the ordinary meaning of the term, is '<u>widely held to exclude alleged losses that</u>

13    <u>are intangible or incorporeal</u>, and, thereby, to preclude any claim against the property insurer

14    when the insured merely suffers a <u>detrimental economic impact unaccompanied by a distinct,</u>

15    <u>demonstrable, physical alteration of the property</u>.'" *MRI Healthcare Ctr. of Glendale, Inc. v.*

16    *State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (2010) (quoting 10A COUCH ON

17    INSURANCE § 148:46, pp. 148-81) (emphasis added). In other words, "[a] direct physical loss

18    'contemplates an actual change in insured property then in a satisfactory state, occasioned by

19    accident or other fortuitous event directly upon the property causing it to become unsatisfactory

20    for future use or requiring that repairs be made to make it so.'" *Id.* (quoting *AFLAC Inc. v.*

21    *Chubb & Sons, Inc.*, 581 S.E.2d 317, 319 (Ga. App. 2003)). "For there to be a 'loss' within the

22    meaning of the policy, some *external force* must have acted upon the insured property to cause a

23    *physical change* in the condition of the property, i.e., it must have been 'damaged' within the

24    common understanding of that term." *Id.* at 780; *see also Ward General Ins. Services, Inc. v.*

25    *Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556-57 (2003) ("[T]he loss of the [computer]

26    database, with its consequent economic loss, but with <u>no loss of or damage to tangible property</u>,

27    was not a 'direct physical loss of or damage to' covered property under the terms of the subject

28    insurance policy, and, therefore, the loss is not covered.") (emphasis added); *Meridian Textiles,*

– 13 –

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

1   *Inc. v. Indem. Ins. Co. of N. Am.*, No. CV 06-4766 CAS, 2008 WL 3009889, \*6 (C.D. Cal. Mar.

2   20, 2008) (in order to establish direct physical loss or damage to yarn, insured was required to

3   show "some tangible change in the yarn" or "some detectable physical change").

4          Because Plaintiff does not allege "a distinct, demonstrable, physical alteration of the

5   property,'" or "a physical change in the condition of the property, i.e., [that it was] 'damaged'

6   within the common understanding of that term," its claim for Business Income and Extra

7   Expense coverage fails as a matter of law. *MRI Healthcare Ctr.*, 187 Cal. App. 4th at 779-80

8   (finding no coverage where "there was no 'distinct, demonstrable [or] physical alteration' of the

9   MRI machine"); *see also Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616

10  (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function constitutes

11  'direct physical loss or damage'"); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, No.

12  2:12-CV-00245-WCO, 2014 WL 12480022, at \*6 (N.D. Ga. May 23, 2014) ("The court will not

13  expand 'direct physical loss' to include loss-of-use damages when the property has not been

14  physically impacted in some way. To do so would be equivalent to erasing the words 'direct'

15  and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No.

16  3:06CV00722-DPJ-JCS, 2007 WL 9775576, at \*5 (S.D. Miss. Nov. 19, 2007) (where insured

17  was denied access to computer data during power outage, this was not "direct physical loss of or

18  damage to" property); *Herr v. Forghani*, 161 Wash. App. 1037, 2011 WL 1833829, \*7 (2011)

19  (unpublished ) (explaining that insured "must show direct physical loss to tangible property,"

20  and "alleged loss  of use of his property caused by the supposed increased easement use" was

21  not covered).[7]

22

23

24

_____

25  [7] Moreover, the Policy must be read as a whole, *Palmer*, 21 Cal. 4th at 1118, and Plaintiff's
    contention that a limitation on the use of Plaintiff's premises constitutes "direct physical loss of
26  or damage" is further dispelled by the fact that the Policy excludes "loss or damage caused by or
    resulting from . . . loss of use," "loss or damage caused directly or indirectly by . . . [t]he
27  enforcement of any ordinance or law . . . [r]egulating the . . . use . . . of any property," and "loss
    or damage caused by or resulting from . . . [a]cts or decisions . . . of any . . . governmental
28  body."  Policy, at 91, 93, 95.

**2.    As a Matter of Law, Plaintiff Cannot Establish Entitlement to Business Income and Extra Expense Coverages Because Those Coverages Do Not Apply to Losses Caused by or Resulting from a Virus**

Even if Plaintiff had alleged direct physical loss of or damage to property at the insured premises, which, again, as a matter of law it has not, Plaintiff's claims for Business Income and Extra Expense coverages still would fail as a matter of law.  Plaintiff cannot escape the fact that a virus is not a Covered Cause of Loss: the virus exclusion expressly applies not only to Civil Authority coverage but also to the Business Income and Extra Expense coverages.  Policy at 217 ("The exclusion applies to . . . forms or endorsements that cover *business income, extra expense*, rental value or action of civil authority") (emphasis added).  Plaintiff's only allegations regarding purported loss of or damage to property giving rise to a suspension of its operations attribute it to the Coronavirus (Compl. ¶¶ 27, 59, 67), and the virus exclusion precludes coverage for Business Income and Extra Expense claimed on this basis. Thus, as a matter of law, Plaintiff's Complaint premised on the Coronavirus cannot trigger Business Income or Extra Expense coverage.

**C.    Dismissal of the First Cause of Action Is Proper Because Plaintiff Is Not Entitled to Its Requested Declaration**

Because Plaintiff cannot demonstrate as a matter of law that it is entitled to coverage under the Policy's Business Income, Extra Expense or Civil Authority provisions, Plaintiff is not entitled to the declaration it seeks. Plaintiff has specifically requested a declaration that "its business income losses are covered and not precluded by exclusions or other limitations in its comprehensive business insurance policy." Compl. ¶ 62; *see also* Prayer for Relief, ¶ b.  As discussed above, Plaintiff has failed to state a claim that Civil Authority, Business Income, or Extra Expense coverage exists, and the virus exclusion precludes any coverage for Plaintiff's claim. Thus, no cognizable legal theory or set of facts has been alleged to sustain the declaration.

**D.      Dismissal of the Second Cause of Action for Breach of Contract is Proper Because Mudpie Fails to Allege Any Entitlement to Coverage**

To be entitled to damages for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *Buschman v. Anesthesia Bus. Consultants, LLC*, 42 F.Supp.3d 1244, 1250 (N.D. Cal. 2014) (citing *CDF Firefighters v. Maldonado*, 158 Cal.App.4th 1226, 1239 (2008)). "[A]bsent an actual withholding of benefits due, there is no breach of contract." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1152 n.10 (1990), quoting Kornblum et al., Cal. Practice Guide: Bad Faith, supra., § 4:28, p. 4-9; *see also R. L. H., III by & through Hunter v. United Servs. Auto. Ass'n*, No. cv-7942-VAP, 2008 WL 11336180, at *6 (C.D. Cal. Apr. 10, 2008), *aff'm sub nom. R.L.H. ex rel. Hunter v. United Servs. Auto. Ass'n*, 327 F. App'x 714 (9th Cir. 2009) (affirming summary judgment for insurer on breach of contract claim, given insurance policy exclusion facially denied coverage); *1231 Euclid Homeowners Assn. v. State Farm Fire & Cas. Co.*, 135 Cal. App. 4th 1008, 1020–21 (2006) ("The failure of [a policy's] conditions precedent is a complete defense to [an insured's] breach of contract claim.") (affirming summary judgment for insurer).

Here, under the Policy's clear terms, Plaintiff can plead neither "benefits due" nor "actual withholding." *Love*, 221 Cal. App. 3d at 1152 n.10.  Because Mudpie is not entitled to coverage under the Policy as a matter of law, "there is no breach of contract" and its claim must be dismissed. *Id.*; *see also Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1201 (N.D. Cal 2016) (dismissing insured's breach of contract claim because insured could not demonstrate that defendant had breached the policy where a household exclusion applied).

**E.      Dismissal of the Third Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Proper Because Mudpie Is Not Entitled to Coverage as a Matter of Law**

To establish a claim for breach of the implied covenant of good faith and fair dealing, "(1) *benefits due under the policy* must have been withheld; and (2) the reason for withholding

– 16 –

1    benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221

2    Cal. App. 3d 1136, 1151 (1990) (emphasis added).  The "threshold requirement" in such a claim

3    is that insurance coverage exists under the plaintiff's policy.  *Id.* at 1152.  Thus, a bad faith

4    claim "cannot be maintained unless policy benefits are due under a contract." *Waller v. Truck*

5    *Ins. Exch., Inc.* 11 Cal. 4th 1, 35 (1995); *see, e.g.*, *Minich v. Allstate Ins. Co.* 193 Cal. App. 4th

6    477, 493 (2011) (the "claim for tortious breach of contract (bad faith) fails as a matter of law

7    because [the insurer] did not breach the Policy"); *Brown v. Mid-Century Ins. Co.* 215 Cal. App.

8    4th 841, 858 (2013) ("Because the policy did not cover the [insureds'] claims, however, the

9    [insureds] do not have a claim for breach of the implied covenant of good faith and fair

10   dealing.").

11           Applying this well-established California law, district courts routinely dismiss claims for

12   breach of the covenant of good faith and fair dealing when plaintiffs' allegations of coverage

13   under their policies fail to state a claim. *See Sigma Fin. Corp. v. Gotham Ins. Co.*, No. CV 15-

14   01531 AGD, 2017 WL 9511732, at *2 (C.D. Cal. Mar . 31, 2017) (granting motion to dismiss

15   with prejudice when the insurer "didn't breach the excess-liability insurance contract, so it

16   follows that [the insured] can't possibly recover for breach of the implied covenant of good faith

17   and fair dealing"); *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1116 (S.D. Cal. 2013)

18   ("Because [plaintiffs] cannot sue for bad faith without proving that benefits were withheld under

19   the policy 'as written,' and because [plaintiffs] cannot establish that coverage existed under the

20   express terms of the contract, there is no cause of action for breach of the implied covenant of

21   good faith and fair dealing."); *Moss v. Infinity Ins. Co.*, No. 15-CV-03456-JSC, 2015 WL

22   7351395, at *5 (N.D. Cal. Nov. 20, 2015) (dismissing implied covenant claim when the policy

23   "excluded from coverage the particular situation for which Plaintiff sought benefits").  Here,

24   because Mudpie is not entitled to coverage under the Policy as a matter of law, its claim for bad

25   faith breach of the covenant of good faith and fair dealing must be dismissed.

26           Given Plaintiff's substantive claims are without merit, attorneys' fees and costs of suit

27   are likewise unavailable. *Boza v. U.S. Bank Nat. Ass'n*, No. LA CV 12-06993 JAK, 2013 WL

28   5943160, at *4 (C.D. Cal. Oct. 28, 2013) ("in determining whether attorney's fees are warranted

– 17 –

1  in the first instance, the predicate is the prior decision that a court made on the merits of one or

2  more substantive claims as to which a fee award may be granted.").

3  **F.   The Putative Class Claims Must Be Dismissed Where Plaintiff's Individual**

4  **Claims Fail**

5  To the extent Plaintiff attempts to plead claims on behalf of a proposed class (Complaint,

6  ¶¶ 39-53), those allegations cannot survive where Plaintiff's individual claims fail to state a

7  claim. *See*, *e.g.*, *Lawrence v. Zilog, Inc.*, 242 F.3d 382 (9th Cir. 2000) ("Because no class was

8  ever certified in this case, and the named plaintiffs lack a viable claim, dismissal was proper.");

9  *Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974) (putative class claims cannot properly

10  be considered "where the named plaintiffs have failed to state a claim in themselves for the

11  relief they seek"); *Kamath v. Robert Bosch LLC*, No. 2:13-CV-08540-CAS, 2014 WL 2916570,

12  at *5 n.4 (C.D. Cal. June 26, 2014) ("at the motion to dismiss stage, the Court only considers

13  allegations pertaining to the named plaintiff because a putative class action cannot proceed

14  unless the named plaintiff can state a claim for relief as to himself").

15  **V.   CONCLUSION**

16  For all of the reasons stated above, Mudpie has failed to state any claim upon which

17  relief must be granted.  Thus, Travelers respectfully requests that the Court dismiss the

18  Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

19  DATED:  June 3, 2020

20  BULLIVANT HOUSER BAILEY PC

21

22  By  */s/ Andrew B. Downs*

23  Andrew B. Downs
   Linda B. Oliver

24  Stephen E. Goldman

25  (*pro hac vice to be sought*)
   Wystan M. Ackerman

26  (*pro hac vice to be sought*)
   ROBINSON & COLE LLP

27

28  Attorneys for Defendant Travelers Casualty
   Insurance Company of America

– 18 –

1

**STATEMENT IN LIEU OF CERTIFICATE OF SERVICE**

2

This document will be served via the Court's CM/ECF system, thus filing counsel is

3

unable to certify at this time that service has occurred.  Should the CM/ECF e-file notice report

4

any failures in electronic service, counsel will serve this document by another means and will

5

file a supplemental Certificate of Service.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST