1  Eric H. Gibbs (SBN 178658)
   ehg@classlawgroup.com
2  Andre M. Mura (SBN 298541)
   amm@classlawgroup.com
3  Karen Barth Menzies (SBN 180234)
   kbm@classlawgroup.com
4  Amy M. Zeman (SBN 273100)
   amz@classlawgroup.com
5  Steve Lopez (SBN 300540)
   sal@classlawgroup.com
6  **GIBBS LAW GROUP LLP**
7  505 14th Street, Suite 1110
   Oakland, CA 94612
8  Telephone: (510) 350-9700
   Facsimile: (510) 350-9701
9

10

                    Andrew N. Friedman*
                    afriedman@cohenmilstein.com
                    Victoria S. Nugent *
                    vnugent@cohenmilstein.com
                    Julie Selesnick*
                    jselesnick@cohenmilstein.com
                    Geoffrey Graber (SBN 211547)
                    ggraber@cohenmilstein.com
                    Eric Kafka*
                    ekafka@cohenmilstein.com
                    Karina G. Puttieva (SBN 317702)
                    kputtieva@cohenmilstein.com
                    **COHEN MILSTEIN SELLERS &
                    TOLL PLLC**
                    1100 New York Ave. NW, Fifth Floor
                    Washington, DC 20005
                    Telephone: (202) 408-4600
                    Facsimile: (202) 408-4699

11

12

13  *pro hac vice application anticipated*

14

15  *Attorneys for Plaintiff and Proposed Class*

16

17

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

18

19  MUDPIE, INC.,

20                        Plaintiff,

21       v.

22

23  TRAVELERS CASUALTY
    INSURANCE COMPANY OF
24  AMERICA,

25

26                        Defendant.

27

28

Case No. 4:20-cv-3213-JST

**Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss**

Hearing Date: July 29, 2020
Time: 2:00 p.m.
Courtroom: 6, Oakland

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................1

II.   FACTS.....................................................................................................3

      A.    California restricts in-person gatherings to protect the integrity of
            the health care system and delivery of essential services....3

      B.    Travelers denies coverage for Mudpie's business interruption......4

III.  LEGAL STANDARD ................................................................................6

IV.   ARGUMENT............................................................................................7

      A.    Mudpie has plausibly pleaded a covered loss.................................7

            1.    The business interruption alleged here is an insurable loss. ..7

            2.    An extension of coverage for civil authority does not limit
                  Travelers' liability under the policy. ...................................10

      B.    Travelers fails to establish that any exclusion compels dismissal.
            ....................................................................................................12

            1.    The virus exclusion is inapplicable because Mudpie's
                  losses are due to the closure orders, not a virus.................13

            2.    Travelers has waived argument concerning any other
                  exclusion. ...............................................................................17

V.    CONCLUSION.......................................................................................17

# TABLE OF AUTHORITITES

**Cases**

*Acosta–Huerta v. Estelle*,

    7 F.3d 139 (9th Cir. 1992) ................................................................................ 17

*Am. Alternative Ins. Corp. v. Super. Ct.*,

    135 Cal. App. 4th 1239 (2006) ........................................................................ 8

*Aragon-Haas v. Family Sec. Ins. Servs., Inc.*,

    231 Cal. App. 3d 232, 282 Cal. Rptr. 233 (1991) ......................................... 7, 12

*Bob Lewis Volkswagen v. Universal Underwriters Grp.*,

    571 F. Supp. 2d 1148, 1154 (N.D. Cal. 2008) ............................................... 10

*Braden Partners, LP v. Twin City Fire Ins. Co.*,

    No. 14-CV-01689-JST, 2017 WL 63019 (N.D. Cal. Jan. 5, 2017) ............... 10, 12

*City of Emeryville v. Robinson*,

    621 F.3d 1251 (9th Cir. 2010) ........................................................................ 17

*Cox v. Allin Corp. Plan*,

    70 F. Supp. 3d 1040 (N.D. Cal. 2014) ............................................................ 13

*Dundee Mut. Ins. Co. v. Marifjeren*,

    587 N.W.2d 191 (N.D. 1998) .......................................................................... 9

*Estate of Saunders v. Comm'r*,

    745 F.3d 953 (9th Cir. 2014) .......................................................................... 17

*Fields v. Bank of New York Mellon*,

    No. 17-CV-00272-JST, 2017 WL 1549464 (N.D. Cal. May 1, 2017) ............... 16

*Films of Distinction, Inc. v. Allegro Film Prods., Inc., Ltd.*,

    12 F. Supp. 2d 1068 (C.D. Cal. 1998) ............................................................ 11

*Fire Ins. Exch. V. Superior Court*,

    116 Cal. App. 4th 446 (2004) .......................................................................... 12

*Garvey v. State Farm Fire & Cas. Co.*,

    48 Cal. 3d 395 (1989) ................................................................................ 12, 14, 15

1  *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
2      No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ............... 9
3  *Hernandez v. Path, Inc.*,
4      2012 WL 5194120 n.7 (N.D. Cal. Oct. 19, 2012) ............................................. 11
5  *Heston v. Farmers Ins. Group*,
6      160 Cal. App. 3d 402 ........................................................................ 16
7  *Holley v. Gilead Scis., Inc.*,
8      379 F. Supp. 3d 809 (N.D. Cal. 2019) ....................................................... 17
9  *Johnson v. City of Shelby, Miss.*,
10     574 U.S. 10 (2014) ........................................................................... 6
11 *Julian v. Hartford Underwriters Ins. Co.*,
12     110 P.3d 903 (Cal. 2005) ................................................................... 15
13 *King v. County of Los Angeles*,
14     885 F.3d 548 (9th Cir. 2018) ......................................................... 4, 5, 6
15 *Lancaster v. U.S. Shoe Corp.*,
16     934 F. Supp. 1137 (N.D. Cal. 1996) ......................................................... 12
17 *Lopez v. United States*,
18     No. 17-CV-04386-MEJ, 2018 WL 807357 (N.D. Cal. Feb. 9, 2018) .......................... 12
19 *Lotes Co. v. Hon Hai Precision Indus. Co.*,
20     No. C 11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ....................... 11
21 *Manpower Inc. v. Ins. Co. of Penn.*,
22     No. 08C0085, 2009 WL 3738099 (E.D. Wis. Nov. 3, 2009) ................................. 9
23 *Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*, No. CV 06-4766 CAS,
24     2008 WL 3009889 (C.D. Cal. Mar. 20, 2008) ................................................ 8
25 *Minkler v. Safeco Ins. Co. of Am.*,
26     49 Cal. 4th 315, 319 (2010) .............................................................. 10
27 *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
28     187 Cal. App. 4th 766 (2010) ............................................................... 8

*Murray v. State Farm Fire & Cas. Co.*,
  509 S.E.2d 1 (W.Va. 1998) ................................................................ 9

*Raven H. v. Gamette*,
  157 Cal. App. 4th 1017 (2007) ........................................................ 12

*Saltarelli v. Bob Baker Grp. Med. Trust*,
  *35 F.3d 382 (9th Cir. 1994)* ............................................................ 13

*Sanders v. Sodexo, Inc.*,
  No. 2:15-cv-00371-JAD-GWF, 2015 WL 4477697 (D. Nev. July 20, 2015) ..................... 17

*Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*,
  665 F.3d 1166 (9th Cir. 2012) ........................................................ 11

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ...................................................................... 6

*Smith v. City of Oakland*,
  No. 19-CV-05398-JST, 2020 WL 2517857 (N.D. Cal. Apr. 2, 2020) ................................ 6

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
  No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11, 2018) .................. 7, 8

*TRAVCO Ins. Co. v. Ward*,
  715 F. Supp. 2d 699 (E.D. Va. 2010) *aff'd* at 504 F. App'x 251 (4th Cir. 2013) ............... 9

*Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.*,
  929 F.3d 1143 (9th Cir. 2019) ........................................................ 15

*Universal Sav. Bank v. Bankers Standard Ins. Co.*,
  No. B159239, 2004 WL 515952 (Cal. Ct. App. Mar. 17, 2004) ........................................... 9

*W. Fire Ins. Co. v. First Presbyterian Church*,
  165 Colo. 34, 437 P.2d 52 (1968) .................................................... 9

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
  114 Cal. App. 4th 548 (2003) ........................................................ 8

*Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  255 F. Supp. 3d 970 (N.D. Cal. 2017) ................................................ 12

iv

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 11

Pl's Mem. in Opp. to Def's Mot. to Dismiss
CASE NO. 4:20-cv-3213-JST

Plaintiff Mudpie, Inc. respectfully submits this Memorandum in Opposition to Defendant Travelers Casualty Insurance Company of America's Motion to Dismiss (ECF No. 11) (hereinafter "Mot. to Dismiss").

## I.   INTRODUCTION

California Governor Gavin Newsom declared a state of emergency in early March 2020 to slow the spread of the novel coronavirus disease (COVID-19). Soon after, the Governor and local officials ordered Californians to stay at home and to observe physical-distancing protocols when outside. These orders permitted businesses that serve critical needs, such as providing food and medicine, to continue operating under certain conditions. But businesses such as certain retail stores, where customers gather in close proximity, were not allowed to remain open.

Mudpie, a clothing store in San Francisco, has an all-risk commercial insurance policy, issued by Travelers, that covers against (among other things) a suspension of business caused by the direct physical loss of its property. Mudpie sought coverage for a business interruption when its store could no longer perform its core function—generating business income through in-store sales—because California had suspended its business.

Travelers resists that straightforward reading of the policy and seeks to dismiss Mudpie's suit for declaratory relief, breach of contract, and bad faith failure to investigate Mudpie's claims before denying coverage. Travelers' main argument for why Mudpie cannot establish coverage under the policy is that Mudpie's inability to sell goods at its store does not, in Travelers' view, qualify as a direct physical loss of property because this condition (loss) is only met when the property itself undergoes a physical change. But a federal district court, applying California law, rejected that line of argument when Travelers pressed it in another case, concluding instead that the plain language of a policy covering loss of property is irreconcilable with Travelers' position requiring damage.

Travelers never cites this leading case, and it barely grapples with the policy's

initial grant of coverage for the loss of the insured's property. Instead, Travelers devotes the bulk of its Motion to language in a section of the policy that *extends* coverage when *other* real or personal property is lost or damaged. One such provision extends coverage when access to an insured's property is prohibited by a civil authority order issued due to physical loss of or damage to *other* property within 100 miles of the insured's property. Travelers contends this extension of coverage is a limitation on the initial grant of insurance coverage. But the Ninth Circuit, applying California law, has rejected this line of argument because an extension of coverage cannot limit liability under a policy. Travelers' heavy emphasis on this extension, then, is misplaced and provides no basis to dismiss any claim in the Complaint, which plausibly pleads coverage for the loss of the insured's property.

Travelers also seeks dismissal based on an endorsement that purports to eliminate coverage for loss caused by or resulting from a virus that causes illness or disease. That endorsement is inapplicable because Mudpie plausibly pleads that state and local closure orders caused its loss. And that much is obvious: if the loss were caused by or resulted from a virus, Mudpie would be closed only as long as it would take to disinfect the store or quarantine employees. But Mudpie's loss is caused by government closure orders and thus will last for however long those restrictions remain.

Travelers' contrary conclusion rests on an expansive reading of this endorsement, one that stretches causation to bring in the motivations of the state in issuing a closure order. But California law requires that exclusionary language in an insurance policy be read narrowly—and the law does not allow an insurer to deny coverage based on a remote, excluded cause somewhere in the chain of causation *even if* the policy contains clear language to that effect. The virus endorsement, then, does not and cannot defeat coverage because the government closure orders are the cause, or at least the most important cause, of Mudpie's losses.

This putative class action—and this early motion practice—comes to the Court

as a national dispute over business interruption coverage lurks behind the scenes. Insurance companies are categorically denying coverage for any business interruption from government closure orders, without any investigation and regardless of the policy's terms, many of which are undefined. Indeed, insurance companies are denying claims even under all-risk policies like the one Travelers issued to Mudpie, which contain no on-point exclusions such as for a pandemic.

But those larger and important questions are for another day. There is no reason to sweep beyond the principles needed to decide a routine question about the sufficiency of the pleadings. Having informed Travelers of the factual basis for its Complaint, Mudpie is required to do no more to cross the federal court's threshold.

The Court should deny Travelers' Motion in full or grant leave to amend if any claim is dismissed.

## II.   FACTS

### A.   California restricts in-person gatherings to protect the integrity of the health care system and delivery of essential services.

In the United States alone, COVID-19 has infected millions of persons and over 100,000 have died.[1] *See generally* Compl. ¶¶ 17, 18, 20. Worldwide, scientists have advised governments to mandate or encourage population-wide social distancing, because coronavirus spreads easily from person to person in confined environments. *See* Compl. ¶ 22. The goal of social distancing is to slow the virus's spread, in order to provide time for the development, production, and distribution of medical treatment or a vaccine, and to decrease the burden on health care services and critical infrastructure in the interim so that these systems are not overwhelmed.

Beginning in March 2020, California adopted its own emergency measures to slow the COVID-19's spread. Compl. ¶ 24. In a series of public health orders, the Governor, state health officials, and the City and County of San Francisco directed

---

[1] Centers for Disease Control & Prevention, Coronavirus Disease, *Cases in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

1    Californians to stay at home and to respect physical-distancing protocols. Compl. ¶¶

2    24-25; Cal. Exec. Order No. 25-20 (Mar. 12, 2020), https://tinyurl.com/uuq893k; Cal.

3    Exec. Order No. 33-20 (Mar. 19, 2020), https://tinyurl.com/rajrstz; Order of The

4    Health Officer No. C19-07 (Mar. 16, 2020), https://tinyurl.com/y8zeguzo.[2] These

5    closure orders provided exemptions for certain critical sectors, such as grocery stores

6    or pharmacies, so long as safeguards were in place to protect workers and the

7    community. *See* Cal. Exec. Order No. 33-20. But the risk of viral spread at a rate that

8    would overwhelm California's healthcare system was deemed too substantial to

9    allow in-person gatherings elsewhere, such as at certain retail stores. *See id.*

10   Mudpie is one of many retail stores in San Francisco that was forced to

11   suspend its business operations because of these restrictions on in-person gatherings

12   at non-essential businesses. *See* Compl. ¶ 27. It has suffered significant losses and

13   may close permanently after 44 years absent insurance coverage for its losses. *See*

14   Compl. ¶ 38.

15   **B.   Travelers denies coverage for Mudpie's business interruption.**

16   Mudpie, a responsible business, tried to plan ahead for any possible situation

17   that could result in business liability, loss, or damage to business property, or loss of

18   business income due to the interruption of business operations. It thus purchased

19   comprehensive commercial liability and property coverage from Travelers to insure

20   against all such concerns. Compl. ¶ 30. Travelers issued Store Pac Policy No. 680-

21   1G147295-19-42, effective from August 28, 2019 to August 28, 2020, to Mudpie.

22   This commercial insurance policy covers against all risks that are not

23   otherwise excluded or limited. *See* App. A (relevant excerpts of insurance policy). It

24   includes a product called the Businessowners Coverage Part Deluxe, which covers

25   business income and extra expenses. *See* App. A at 1. Under that initial grant of

26   coverage, Travelers must "pay for the actual loss of Business Income [] sustain[ed]

27

28   _____
     [2] The Court may take judicial notice of these orders. *See King v. County of Los Angeles*,
     885 F.3d 548, 555 (9th Cir. 2018); *see also* Def.'s Req. for Judicial Notice, ECF No. 11-3.

due to the necessary "suspension" of [] "operations" … caused by direct physical loss of or damage to property at the described premises," App. A at 1, which is the location of Mudpie's physical store. This coverage also pays for extra expense, defined as "reasonable and necessary expenses" that would not have been incurred "if there had been no direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.*

In its definition of "Covered Cause of Loss," the policy includes all risks of physical loss except those expressly limited or excluded. *See* App. A at 2. Once the coverage is triggered, the policy covers the "actual" loss of business income and for certain extra expenses for a period of 12 months. *Id.* at 1.

Beyond that initial grant of coverage, the policy also extends coverage when other real or personal property is lost or damaged. *Id.* at 2. These "Coverage Extensions" include, for example, coverage for newly acquired premises or personal property off premises. *See* Mot. to Dismiss, Kupec Decl. Ex. 1, at 83, ECF No. 11-2. And it includes additional coverage when a "civil authority action [is] due to direct physical loss of or damage to property at locations, *other than described premises*, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss," provided the civil authority action "prohibits access to the described premises." App. A at 2 (emphasis added). In that event, the policy provides three weeks of coverage for business income and extra expense. *Id.* at 2.

In addition, the policy has certain endorsements that purport to limit coverage. One such endorsement states that Travelers will not pay for "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." App. A at 3. Notably, the policy does not contain a public safety exclusion, a public health exclusion, or even a pandemic exclusion.

Lastly, many terms in the policy are undefined. For example, the term "Risks of Direct Physical Loss" is not defined in the policy; nor are the individual terms

risks, direct, physical, or loss. Property damage is defined in the policy, but not in the businessowners coverage part; both the commercial general liability part and an endorsement to that coverage part titled Amendment of Coverage – Property Damage, defines damage to property as including "[l]oss of use of tangible property that is not physically injured." Kupec Decl. Ex. 1, at 32, 141.

Travelers denied Mudpie's request for insurance coverage nine days after Mudpie submitted a notice of its loss, and it did so without any investigation. Compl. ¶¶ 32-34. Travelers took the position, with barely any explanation and with no legal support, that, "[b]ecause the limitations on your business operations were the result of the Governmental Order, as opposed to 'direct physical loss or damage to property at the described premises' . . . this Business Income and Extra Expense coverage does not apply to your loss." Compl. ¶ 33. Travelers also stated (among other things) that any such loss was not covered because of a virus exclusion. *See id.*

## III.    LEGAL STANDARD

The question before the Court is not whether Mudpie will ultimately prevail on its declaratory-relief and contract claims, but whether Mudpie's Complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). That low bar to entry is met when a complaint "state[s] simply, concisely, and directly events that . . . [allegedly] entitle[] [it] to [relief] from the [defendant]." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam).

When reviewing a motion to dismiss a court must "'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable' to the plaintiff." *Smith v. City of Oakland*, No. 19-CV-05398-JST, 2020 WL 2517857, at *3 (N.D. Cal. Apr. 2, 2020) (citation omitted). A court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff has failed to plead sufficient facts to state a facially plausible claim to relief. *Id.*

These principles apply with particular force in insurance coverage disputes. Indeed, a court must treat the plaintiff's interpretations as true "so long as the

1  [complaint] does not place a clearly erroneous construction on the provisions of the

2  contract." *Aragon-Haas v. Family Sec. Ins. Servs., Inc.*, 231 Cal. App. 3d 232, 239, 282

3  Cal. Rptr. 233 (1991).

4  **IV.    ARGUMENT**

5      **A.    Mudpie has plausibly pleaded a covered loss.[3]**

6      Travelers seeks dismissal because it contends that Mudpie has failed to plead a

7  covered loss. That argument misdirects the Court to an extension of coverage for civil

8  authority while largely evading consideration of the policy's initial grant of coverage

9  for direct physical losses to the store and its contents, including for interruptions in

10  business and the attendant loss of business income. Because Mudpie has plausibly

11  pleaded a loss that falls squarely within the insuring agreement in the

12  Businessowners Coverage Part Deluxe, dismissal is not warranted.

13          **1.    The business interruption alleged here is an insurable loss.**

14      Travelers contends that Mudpie cannot establish a covered loss for business

15  interruption because the policy's language "direct physical loss of or damage to

16  property" is met only when there is a physical change in or alteration of the property.

17  Mot. to Dismiss 13-14, ECF No. 11. A leading case involving this same language in

18  Travelers' policy rejected this argument. *See Total Intermodal Servs. Inc. v. Travelers*

19  *Prop. Cas. Co. of Am.*, No. CV 17-04908 AB (KSX), 2018 WL 3829767 (C.D. Cal. July 11,

20  2018).

21      *Total Intermodal* concerned an insurance dispute over property that was loaded

22  onto a ship in California and became unrecoverable from China. *Id.* at *2. Travelers

23  sought summary judgment, claiming that coverage for "direct physical loss" applies

24  when property is physically damaged, but not when property is merely lost.  *Id.*

25      The court denied Travelers' motion. It concluded, first, that "direct physical

26  loss of . . . Covered Property" was the relevant clause that provides coverage; and

27  next, that the phrase "loss of" property plainly encompasses property that is not

28

---

[3] Mudpie agrees that California law governs this dispute.

accessible. *Id.* at *3-4. The court in *Total Intermodal* also distinguished cases which had read different policy language, such as "direct physical loss *to*" property, as requiring damage or alteration to the property itself. *Id.* at *4 (distinguishing *MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766 (2010)).

There is no good reason to depart from *Total Intermodal*'s sensible reading of the phrase "loss of." That phrase encompasses Mudpie's allegations that the government closure orders made its property unavailable to be occupied or operated, and therefore unfit for retail sales, which is the property's main function if not *raison d'etre* as a storefront, and which constitutes a direct physical loss of Mudpie's insured property. Travelers ignores this and instead rehashes the same construction of "direct physical loss of . . . Covered Property" that the court in *Total Intermodal* rejected, and it does so again based on *MRI Healthcare*, which *Total Intermodal* easily distinguished. *See* 2018 WL 3829767, at *4.

Travelers also cites *Meridian Textiles, Inc. v. Indem. Ins. Co. of N. Am.*, No. CV 06-4766 CAS, 2008 WL 3009889, at *6 (C.D. Cal. Mar. 20, 2008), and *Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 556-57 (2003). But *Meridian Textiles*, like *MRI Healthcare*, did not address the language at issue here. *See Meridian Textiles*, 2008 WL 3009889, at *6. And *Ward* does not help Travelers, either. The claimed loss in that case was intangible data within a computer database. *Ward*, 114 Cal. App. 4th at 556-57. Here, in contrast, Mudpie pleads a loss of its tangible, physical storefront. *See* Compl. ¶ 59. And the policy itself, in the commercial general liability coverage part and an endorsement, defines "Property damage" in two locations, both times as "Loss of use of tangible property that is not physically injured." Kupec Decl. Ex. 1, at 32, 141. This definition supports the conclusion that a reasonable purchaser of insurance would read the policy as providing coverage for a loss of functionality. *See Am. Alternative Ins. Corp. v. Super. Ct.*, 135 Cal. App. 4th 1239, 1248 (2006) (holding that "the use of the word 'damage' as part of the defined term 'physical damage ' which encompass both physical injury and physical loss, may

reasonably be read to endow the word 'damaged' in 'damaged property' with a broader meaning that also encompasses physical loss"); *see also TRAVCO Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 709-10 (E.D. Va. 2010) ("When read in the context of the precedent discussed above, this definition suggests that the parties intended to define 'direct physical loss' to include total loss of use."), *aff'd*, 504 F. App'x 251 (4th Cir. 2013). Given the number of similar lawsuits filed by stores like Mudpie seeking coverage for the lost business income that Travelers and other insurers are denying, this comports with the understanding of reasonable businesses which purchased policies like this the one at issue here.

*Total Intermodal* is not alone in reaching this sensible reading of the phrase "loss of" property. Courts widely agree that the loss of functionality of, or access to, a property constitutes a direct physical loss of property. *See, e.g.*, *Universal Sav. Bank v. Bankers Standard Ins. Co.*, No. B159239, 2004 WL 515952, at *6 (Cal. Ct. App. Mar. 17, 2004) ("The plain meaning of 'direct physical loss' encompasses physical displacement or loss of physical possession. That the loss must be 'physical' distinguishes the loss from some other, incorporeal loss."), vacated on other grounds, No. B159239, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004); *see also Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 17 (W.Va. 1998) (holding that losses that rendered insured property "unusable or uninhabitable, may exist in the absence of structural damage to the insured property."); *Manpower Inc. v. Ins. Co. of Penn.*, No. 08C0085, 2009 WL 3738099, at  *5-7 (E.D. Wis. Nov. 3, 2009) (holding that inaccessibility of personal property constituted a physical loss); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-cv-04418 (WHW)(CLW), 2014 WL 6675934, at *5 (D.N.J. Nov. 25, 2014) ("[P]roperty can be physically damaged, without undergoing structural alteration, when it loses its essential functionality."); *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191, 194 (N.D. 1998) (holding coverage applied without physical alteration because the covered properties "no longer performed the function for which they were designed."); *W. Fire Ins. Co. v. First Presbyterian Church*, 165 Colo.

34, 38–39, 437 P.2d 52, 55 (1968) (holding that gasoline saturation under and around a church rendering occupancy unsafe constituted a "direct physical loss within the meaning of that phrase.").

For these reasons, Mudpie's loss of its storefront constituted a "direct physical loss of" its covered property under the policy's plain language and California law. That is the only reasonable reading of this policy. But even if Travelers' reading were also reasonable, that would at best "create[] an ambiguity which must be construed in favor of coverage that a lay policyholder would reasonably expect." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 319 (2010), *opinion after certified question answered sub nom. Minkler v. Safeco Ins. Co.*, 399 F. App'x 230 (9th Cir. 2010); *see also Bob Lewis Volkswagen v. Universal Underwriters Grp.*, 571 F. Supp. 2d 1148, 1154 (N.D. Cal. 2008).

### 2. An extension of coverage for civil authority does not limit Travelers' liability under the policy.

Travelers devotes considerable attention to language in a section of the policy that *extends* coverage when *other* real or personal property is lost or damaged. One such provision extends coverage when access to an insured's property is prohibited by a civil authority order issued due to physical loss of or damage to *other* property within 100 miles of the insured's property, that is caused by or results from a covered cause of loss. *See* App. A at 2.

Travelers reads this extension of coverage as a limitation on the initial grant of insurance coverage. It thus argues that if coverage is not available under this extension, then it cannot be available under any other aspect of the policy because this extension concerns civil authority orders. Travelers has misread the policy and disregarded California law.

The civil authority extension does not reduce or replace the principal insuring agreement provided under the Businessowners Coverage Part Deluxe establishing the scope of business income coverage; rather, it extends coverage to situations where an insured is unable to demonstrate a "direct physical loss of or damage to" its own

10

covered property. *See* App. A at 2. A coverage extension "gives additional coverage not available elsewhere under the Policy," but it "does not *limit* coverage otherwise available." *Sierra Pac. Power Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 665 F.3d 1166, 1173 (9th Cir. 2012) (emphasis in original). Mudpie has demonstrated a direct physical loss of its covered property. It need not invoke the civil authority extension to establish coverage under the policy, and that extension may not be read to limit the coverage available to Mudpie under the business income and extra expense provisions. *See id.*

Lastly, Travelers' myopic focus on the civil authority extension misreads the complaint and misapprehends the Federal Rules of Civil Procedure. The complaint addresses business income, extra expense, and civil authority coverage, Compl. ¶ 60, but Mudpie's request for declaratory relief only seeks a declaration "that its business income losses are covered and not precluded by exclusions or other limitations in its comprehensive business insurance policy." Compl. ¶ 62. Similarly, Mudpie's claims for breach of contract and breach of the implied warranty of good faith and fair dealing refer generally to Mudpie's "comprehensive business insurance," and ask for a judgment that Travelers breached "its contract(s)." Compl. ¶¶ 64, 69, 71, 73, 74, 77, 79. None of Mudpie's claims seek recovery specifically under the civil authority extension, as each claim is premised on a violation of Travelers' obligations under the policy as a whole. Compl. ¶¶ 62, 71, 79.

Having established coverage for an insurable loss, there is no reason to dismiss any claim or class allegations. *See Films of Distinction, Inc. v. Allegro Film Prods., Inc., Ltd.*, 12 F. Supp. 2d 1068, 1083 (C.D. Cal. 1998). There is no reason even to consider whether the civil authority extension is met or to demand that its mere mention in the Complaint be stricken. *See Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2011 WL 13152817, at *2 (N.D. Cal. July 14, 2011) ("A claim is not a subdivision or subcategory of a cause of action," and a motion to dismiss should not be used to "strike certain allegations"); *Hernandez v. Path, Inc.*, 12-CV-01515 YGR,

11

1    2012 WL 5194120, at *6 n.7 (N.D. Cal. Oct. 19, 2012) ("Federal Rule of Civil Procedure

2    12(b)(6) is not an appropriate device to eliminate a portion of a claim.").

3           **B.**        **Travelers fails to establish that any exclusion compels dismissal.**

4           According to Travelers, a so-called virus exclusion precludes coverage and

5    compels dismissal. To the contrary, this exclusion provides no basis for dismissal.

6           In California, "exclusion clauses are to be interpreted narrowly in order to

7    protect the insured." *Yahoo! Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 255 F.

8    Supp. 3d 970, 974 (N.D. Cal. 2017); *Braden Partners,* No. 14-CV-01689-JST, 2017 WL

9    63019, at *7 (N.D. Cal. Jan. 5, 2017) (same). When deciding an insurer's motion to

10   dismiss, the Court must accept the policyholder's interpretation as true "so long as

11   the [complaint] does not place a clearly erroneous construction on the provisions of

12   the contract." *Aragon-Haas*, 231 Cal. App. 3d at 239. What's more, the question of

13   which peril or perils caused the loss is a triable factual issue that courts do not decide

14   on the pleadings. *See Garvey v. State Farm Fire & Cas. Co.,* 48 Cal. 3d 395, 412-13 (1989);

15   *see also Lopez v. United States,* No. 17-CV-04386-MEJ, 2018 WL 807357, at *6 (N.D. Cal.

16   Feb. 9, 2018) (proximate cause is ordinarily a question of fact, not law) (*citing Raven

17   H. v. Gamette,* 157 Cal. App. 4th 1017, 1029-30 (2007)).

18          Travelers' contrary position ignores these settled principles. For one, Travelers

19   misconstrues the allegations in the Complaint in an attempt to shoehorn Mudpie's

20   allegations into this exclusion when, by law, the Court's decision must be guided by

21   Mudpie's allegations of loss caused by government orders, which are accepted as

22   true at this stage. For another, Travelers advances a broad reading of an exclusion

23   that is not only untenable on its own terms but disregards the legal principal that

24   courts must credit reasonable readings that favor coverage. *See, e.g.*, *Fire Ins. Exch. V.

25   Superior Court*, 116 Cal. App. 4th 446, 470 (2004). Indeed, Travelers' understanding of

26   the scope of this exclusion would destroy entire grants of coverage and would violate

27   California rules of insurance.

28          The reasonable expectations doctrine, moreover, requires that the insurance

policy be read consistent with the understanding that an ordinary insured would have of it. *See, e.g., Lancaster v. U.S. Shoe Corp.*, 934 F. Supp. 1137, 1157 (N.D. Cal. 1996) (exclusions that are not clear, plain, and conspicuous enough to negate a layman's objectively reasonable expectations of coverage are unenforceable). Under this doctrine, "[a]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage [as Travelers' "all risks" policy does] must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured." *Cox v. Allin Corp. Plan*, 70 F. Supp. 3d 1040, 1051 (N.D. Cal. 2014) (quoting *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382, 386 (9th Cir. 1994)).

### 1.    The virus exclusion is inapplicable because Mudpie's losses are due to the closure orders, not a virus.

The policy contains an endorsement titled EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA which excludes "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." App. A at 3. The exclusion applies "to … business income, extra expense and the action of civil authority." *Id.* According to Travelers, the virus exclusion "controls here" as the facts alleged in the Complaint "fall[] squarely within the scope of the virus exclusion," Mot. to Dismiss 9, even though the complaint alleges only that COVID-19 has led to a global pandemic. Compl. ¶¶ 17-19. Mudpie does not claim that a virus caused its losses; instead, Mudpie alleges that its losses are the result of orders issued by Governor Newsom and local officials. *See* Compl. ¶¶ 24-25.

Travelers ignores the allegations in the Complaint, asserting Mudpie's "only allegations regarding purported loss of or damage to property giving rise to a suspension of its operations attribute it to the Coronavirus" and argues "the virus exclusion precludes coverage for Business Income and Extra Expense claimed on this

13

1   basis." Mot. to Dismiss 15. In fact, the Complaint does *not* allege that Mudpies's

2   losses are due to coronavirus. The Complaint alleges:

3           24. California's Governor Gavin Newsom, on March 12, 2020,
4       issued a statewide directive known as the Safer at Home order: "All
        residents are to heed any orders and guidance of state and local public
5       health officials, including but not limited to the imposition of social
        distancing measures, to control the spread of COVID-19."
6
            25. Following closely on the heels of local closure orders,
7       including in San Francisco, on March 19, 2020, the Governor issued
        another series of mandates (the Stay at Home Order)—which remain in
8       effect to date—requiring retailers to cease in-person services, though
        curbside sales or by delivery are now permitted.
9
            27. Mudpie has complied with all applicable orders of California
10      state and local authorities. Compliance with those orders has caused
        direct physical loss of Mudpie's insured property in that the property
11      has been made useless and/or uninhabitable; and its functionality has
        been severely reduced if not completely or nearly eliminated.
12
            28. The impact of these orders is felt not simply in their direct
13      application to Mudpie's operations, but also in their application to
        neighboring businesses and properties, whose property has suffered
14      similar direct physical loss as a result.

15

16  Compl. at ¶¶ 24-28. Travelers' false suggestion that the Complaint attributes the loss

17  of business income and extra expense to COVID-19 renders Travelers' argument

18  about the applicability of the virus exclusion meritless.

19      To the extent Travelers is arguing that the virus exclusion applies because

20  COVID-19 motivated the government's closure orders, and therefore Mudpie's loss

21  was "caused by" a virus, that position runs afoul of California's efficient proximate

22  cause doctrine. The doctrine holds that where two or more independent perils

23  combine to cause a loss, either of which could cause the loss by itself, the "efficient

24  proximate" cause, *i.e.*, the peril legally deemed to cause the loss, is the

25  "predominating" or "most important cause of a loss" that determines whether the

26  loss is covered or excluded. *Garvey,* 48 Cal. 3d at 403, 406. If the efficient proximate

27  cause is a peril the policy covers (here, any "risk of physical loss"), the loss is

28

14

covered. If it is an excluded peril, the loss is excluded. *See id.* at 412-13. Under
California law, the "efficient proximate cause" is the "predominating cause" of the
loss, *i.e.*, the "most important cause." *Id.* at 403, 406. In *Garvey,* the California
Supreme Court explained that the "efficient proximate cause" is not necessarily
either the "moving cause," *i.e.*, the one that sets others in motion, nor is it necessarily
the "immediate cause," *i.e.*, the last one to occur. *Id.* at 402-03. Which one is the "most
important" is an issue for the trier of fact to decide. *Id.* at 412-13.

What's more, "[p]olicy exclusions are unenforceable to the extent that they
conflict with section 530 [of the California Insurance Code] and the efficient
proximate cause doctrine." *Universal Cable Prods., LLC v. Atl. Specialty Ins. Co.,* 929
F.3d 1143, 1161 (9th Cir. 2019) (quoting *Julian v. Hartford Underwriters Ins. Co.*, 110
P.3d 903, 907 (Cal. 2005)). Thus, "the fact that an excluded risk contributed to the loss
would not preclude coverage if such a risk was a remote cause of the loss." *Id.*

Thus, even if the Court determines the coronavirus is a contributing cause of
Mudpie's loss, the virus exclusion still cannot be applied to preclude coverage under
the "efficient proximate cause" doctrine, and certainly not as a matter of law at this
stage of the litigation. Based on Mudpie's allegations, even if it were deemed a
contributing factor, the virus is demonstrably *not* the predominant cause of Mudpie's
losses. Indeed, the complaint nowhere states that Mudpie was closed because its
employees became sick or coronavirus was discovered on the property. Thus, the
facts alleged, and reasonable inferences to be drawn from those facts, support
Plaintiff's claim that the closure orders regulating the operation of businesses in
California—which are a non-excluded peril—are the predominant cause of Mudpie's
losses and that the virus exclusion cannot therefore be a bar to coverage, as it was not
the predominant cause of loss. And that makes good sense. As mentioned, if the loss
were caused by or resulted from a virus, Mudpie would be closed only as long as it
would take to disinfect the store or quarantine affected employees. But Mudpie's loss
is caused by state closure orders and thus will last for however long those restrictions

remain. For these reasons, then, the virus endorsement does not and cannot defeat coverage because the government closure orders are the cause, or at least the most important cause, of Mudpie's losses.

Notably, on at least one occasion known to Mudpie, Travelers has provided a more candid response regarding the cause of its policyholders' business interruption losses, *agreeing* with Mudpie's position that government orders, not the virus, are causing such losses. On June 12, 2020, Travelers filed an answer to a similar complaint brought by two restaurants it insures. The complaint, filed in the Middle District of North Carolina, sought similar relief as is sought here, and Travelers' answer *admitted* the Plaintiffs' allegations that highly similar orders issued by the North Carolina governor were not issued "because of damages being caused by the virus itself," but instead were issued in an attempt to "mitigate community spread of the Virus and COVID-19." Answer to Amended Complaint, *Natty Greene's Brewing Co., LLC v. Traveler's Casualty Ins. Co.*, No. 1:20-cv-00437 (M.D.N.C. filed May 15, 2020), ECF No. 40., attached hereto as Exhibit 1. Travelers' position in the North Carolina case provides another reason this Motion should be denied, as it creates yet another triable issue of fact, *i.e.*, how *Travelers* understands the virus exclusion to apply. *See Fields v. Bank of New York Mellon*, No. 17-CV-00272-JST, 2017 WL 1549464, at *4 n.2(N.D. Cal. May 1, 2017) (court may "take judicial notice of matters of public record outside the pleadings."); *cf. Heston v. Farmers Ins. Group*, 160 Cal. App. 3d 402, 413-14 (1984) (considering brief filed by insurance company's counsel before the National Labor Relations Board as evidence of that party's understanding of a contract).

Had Travelers intended to exclude coverage for pandemic events or the types of public health measures ordered by the California government—as opposed to contamination of property and transmission of disease—Travelers should have done so plainly and explicitly. Indeed, the policy refers to numerous other natural and man-made catastrophes by name. *See, e.g.*, Kupec Decl. Ex. 1, at 92 ("Earthquake"), 93

16

("War, including undeclared or civil war."). Doing so for a pandemic was within Travelers' capability and would have been consistent with its legal obligations as the drafting party possessing superior knowledge of underwriting potential risks.

For these reasons, there is no basis to conclude, at the pleadings stage, that Travelers' virus exclusion precludes Mudpie's claim for coverage.

### 2.  Travelers has waived argument concerning any other exclusion.

In its moving papers, Travelers hints at other possible reasons to deny coverage, but these are presented only in an undeveloped footnote. Mot. to Dismiss 14 n.7. "'Arguments raised only in footnotes, or only on reply, are generally deemed waived' and need not be considered." *Holley v. Gilead Sciences, Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) (quoting *Estate of Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014); *see id.* (citing *Sanders v. Sodexo, Inc.*, No. 2:15-cv-00371-JAD-GWF, 2015 WL 4477697, at *5 (D. Nev. July 20, 2015) ("Many courts will disregard arguments raised exclusively in footnotes." (quoting Bryan Garner, *The Redbook: A Manual on Legal Style* 168 (3d ed. 2013)))).

Waiver is particularly appropriate here because Travelers merely quotes snippets of three exclusions without supporting argument and citation to relevant authorities. *See* Mot. to Dismiss 14 n.7; *see also City of Emeryville v. Robinson*, 621 F.3d 1251, 1262 n. 10 (9th Cir. 2010) ("contentions raised only in footnote in opening brief, without supporting argument and citation to relevant authorities, are deemed abandoned" (quoting *Acosta–Huerta v. Estelle*, 7 F.3d 139, 144 (9th Cir. 1992))).

The Court should adhere to this ordinary practice and decline to consider the merits of Travelers' drive-by denials at this time. *See* Mot. to Dismiss 14 n.7,

## V.   CONCLUSION

For the foregoing reasons, Travelers' Motion to Dismiss should be denied in full. Mudpie has sufficiently pleaded that there is coverage for its loss, and Travelers has failed to show that Mudpie's reading of the insurance policy is clearly erroneous. As such, there is no defect in any claim in the Complaint.

17

If, however, the Motion is granted in any respect, Mudpie requests leave to amend.

June 29, 2020                                Respectfully submitted,

                                             **GIBBS LAW GROUP LLP**

                                             By: */s/ Andre M. Mura*

                                             Eric H. Gibbs
                                             Andre M. Mura
                                             Karen Barth Menzies
                                             Amy M. Zeman
                                             Steve Lopez
                                             505 14th Street, Suite 1110
                                             Oakland, CA 94612
                                             Telephone: (510) 350-9700
                                             Facsimile: (510) 350-9701
                                             ehg@classlawgroup.com
                                             amm@classlawgroup.com
                                             kbm@classlawgroup.com
                                             amz@classlawgroup.com
                                             sal@classlawgroup.com

                                             Andrew N. Friedman (*pro hac vice forthcoming*)
                                             Victoria S. Nugent (*pro hac vice forthcoming*)
                                             Julie Selesnick (*pro hac vice forthcoming*)
                                             Geoffrey Graber (SBN 211547)
                                             Eric Kafka (*pro hac vice forthcoming*)
                                             Karina G. Puttieva (SBN 317702)
                                             **COHEN MILSTEIN SELLERS & TOLL PLLC**
                                             1100 New York Ave. NW, Fifth Floor
                                             Washington, DC 20005
                                             Telephone: (202) 408-4600
                                             Facsimile: (202) 408-4699
                                             afriedman@cohenmilstein.com
                                             vnugent@cohenmilstein.com
                                             jselesnick@cohenmilstein.com
                                             ggraber@cohenmilstein.com
                                             ekafka@cohenmilstein.com

kputtieva@cohenmilstein.com


*Attorneys for Plaintiff and Proposed Class*

Pl's Mem. in Opp. to Def's Mot. to Dismiss
CASE NO. 4:20-cv-3213-JST