1   Stephen E. Goldman (*pro hac vice*)
    E-Mail: sgoldman@rc.com
2   Wystan M. Ackerman (*pro hac vice*)
    E-Mail: wackerman@rc.com
3   ROBINSON & COLE LLP
    280 Trumbull Street
4   Hartford, CT 06103
    Telephone: 860.275.8200
5   Facsimile: 860.275.8299

6   Andrew B. Downs, SBN 111435
    E-mail:andy.downs@bullivant.com
7   Linda B. Oliver, SBN 166720
    E-mail:linda.oliver@bullivant.com
8   BULLIVANT HOUSER BAILEY PC
    101 Montgomery Street, Suite 2600
9   San Francisco, CA 94104
    Telephone: 415.352.2700
10  Facsimile: 415.352.2701

11  Attorneys for Defendant Travelers Casualty
    Insurance Company of America
12

13                  UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                      OAKLAND DIVISION

16  MUDPIE, INC.,                        Case No.: 4:20-cv-03213-JST

17              Plaintiff,               **DEFENDANT TRAVELERS CASUALTY**
                                         **INSURANCE COMPANY OF**
18      vs.                              **AMERICA'S REPLY MEMORANDUM**
                                         **IN FURTHER SUPPORT OF ITS**
19  TRAVELERS CASUALTY INSURANCE         **MOTION TO DISMISS**
    COMPANY OF AMERICA,
20                                       Date:  July 29, 2020
                Defendant.               Time: 2:00 p.m.
21                                       Courtroom 6, Oakland

22

23

24

25

26

27

28

# CONTENTS

I. INTRODUCTION................................................................................1

II. ARGUMENT ...................................................................................2

    A. Plaintiff Has Abandoned Its Claim for Civil Authority Coverage..............................2

    B. As a Matter of Law, Plaintiff is Not Entitled to Business Income or Extra
       Expense Coverage .........................................................................3

        1. Plaintiff's Business Income and Extra Expense Claims Are Barred by the
           Virus Exclusion (and also by the Acts or Decisions Exclusion)....................3

        2. Plaintiff's Argument That It Has Purportedly Sustained a "Direct Physical
           Loss of . . . Property" Fails as a Matter of Law ...............................8

        3. Plaintiff Relies on Inapposite Cases..........................................10

        4. Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic Rules of
           Insurance Policy Interpretation .............................................12

    C. Plaintiff Does Not Dispute That Its Entire Complaint Fails if it Has Not Pled
       a Plausible Claim for Business Income or Extra Expense Coverage........................15

III. CONCLUSION ................................................................................15

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

C<span style="font-size:smaller">ASES</span>

5

*Am. Civil Liberties Union of Nevada v. City of Las Vegas,*
   333 F.3d 1092 (9th Cir. 2003)................................................................7

6

7

*Atlas Assurance Co. v. McCombs Corp.,*
   146 Cal. App. 3d 135 (1983)................................................................5

8

9

*Brodkin v. State Farm Fire & Cas. Co.,*
   217 Cal. App. 3d 210 (1989)................................................................6

10

*Brown v. Mid-Century Ins. Co.,*
   215 Cal. App. 4th 841 (2013)................................................................6

11

12

*Celgard, LLC v. Shenzhen Senior Tech. Material Co. (US) Research Inst.,*
   No. 19-CV-05784-JST, 2020 WL 1548513 (N.D. Cal. Mar. 5, 2020) ...................................7

13

14

*Chadwick v. Fire Ins. Exch.,*
   17 Cal. App. 4th 1112 (1993)................................................................5

15

*City of Emeryville v. Robinson,*
   621 F.3d 1251 (9th Cir. 2010)................................................................7

16

17

*Commercial Union Ins. Co. v. Sponholz,*
   866 F.2d 1162 (9th Cir. 1989)................................................................9

18

19

*Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.,*
   774 N.Y.S.2d 710 (N.Y. App. Div. 2004)................................................................7

20

*De Bruyn v. Superior Court,*
   158 Cal. App. 4th 1213 (2008)................................................................5

21

22

*Doyle v. Fireman's Fund Ins. Co.,*
   21 Cal. App. 5th 33 (2018)................................................................8, 9

23

24

*Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.,*
   No. C-05-1315 MHP, 2006 WL 2130743 (N.D. Cal. July 27, 2006), *aff'd,*
   291 F. App'x 807 (9th Cir. 2008)................................................................6

25

26

*Dundee Mut. Ins. Co. v. Marifjeren,*
   587 N.W.2d 191 (N.D. 1998)................................................................11

27

*Estate of Saunders v. Comm'r,*
   745 F.3d 953 (9th Cir. 2014)................................................................7

28

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .................................................................................................. 2

*Garvey v. State Farm Fire & Cas. Co.*,
   48 Cal. 3d 395 (1989) ........................................................................................................... 5

*Gavrildes Mgmt. Co. v. Michigan Ins. Co.*,
   Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) ..................................................... 10

*Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*,
   No. 2:12-CV-04418 WHW, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ............................. 11

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.*,
   S.E.2d 249, 250-51 (N.C. Ct. App. 1997) ........................................................................... 9

*Holley v. Gilead Sciences, Inc.*,
   379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) ........................................................................ 7

*Hughes v. Potomac Ins. Co.*,
   199 Cal. App. 2d 239 (1962) ............................................................................................... 11

*J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*,
   No. 3:06CV00722-DPJ-JCS, 2007 WL 9775576 (S.D. Miss. Nov. 19, 2007) ...................... 9

*Jernigan v. Nationwide Mut. Ins. Co.*,
   No. C 04-5327 PJH, 2006 WL 463521 (N.D. Cal. Feb. 27, 2006) ........................................ 6

*Julian v. Hartford Und. Ins. Co.*,
   35 Cal. 4th 747 (2005) ......................................................................................................... 5

*Manpower Inc. v. Ins. Co. of the State of Pa.*,
   No. 08C0085, 2009 WL 3738099 (E.D. Wis. Nov. 3, 2009) ............................................... 11

*Murray v. State Farm Fire & Cas. Co.*,
   509 S.E.2d 1 (W. Va. 1998) ................................................................................................. 11

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ........................................................................... 12

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
   2014 WL 12480022 (N.D. Ga. May 23, 2014) ...................................................................... 9

*Palmer v. Truck Ins. Exch.*,
   21 Cal. 4th 1109 (1999) ....................................................................................................... 12

*Pentair, Inc. v. Am. Guarantee & Liab. Ins. Co.*,
   400 F.3d 613 (8th Cir. 2005) ............................................................................................... 9

*Perez-Farias v. Glob. Horizons, Inc.*,
   No. CV-05-3061-RHW, 2009 WL 10690337 (E.D. Wash. Nov. 12, 2009) .......................... 7

– iii –

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
    385 F. Supp. 2d 280 (S.D.N.Y. 2005)................................................................12

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    751 N.Y.S.2d 4 (N.Y. App. Div. 2002)..............................................................13

*Sanders v. Sodexo, Inc.*,
    No. 2:15-CV-00371-JAD, 2015 WL 4477697 (D. Nev. July 20, 2015)..................7

*Sapiro v. Encompass Ins.*,
    No. C 03-4587 MHP, 2004 WL 2496090 (N.D. Cal. Nov. 2, 2004) ......................6

*Sarmiento v. Sealy, Inc.*,
    No. 18-CV-01990-JST, 2019 WL 3059932 (N.D. Cal. July 12, 2019) .................11

*Schneider Equip., Inc. v. Travelers Indem. Co. of Illinois*,
    No. CIV. 04-1482-HA, 2006 WL 2850465 (D. Or. Sept. 29, 2006)....................13

*Stephens v. Liberty Mut.*,
    No. C 05-0213 PJH, 2008 WL 480287 (N.D. Cal. Feb. 19, 2008) .........................6

*Titan Corp. v. Aetna Cas. & Sur. Co.*,
    22 Cal. App. 4th 457 (1994)................................................................................14

*Torres v. Nationstar Mortg. LLC*,
    No. EDCV 16-302-JFW, 2016 WL 10988576 (C.D. Cal. Apr. 8, 2016).................2

*Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of Am.*,
    Case No. CV17-04908AB(KSx), 2018 WL 3829767 (C.D. Cal. July 11,
    2018)...................................................................................................................10

*Travco Ins. Co. v. Ward*,
    715 F. Supp. 2d 699 (E.D. Va. 2010) ..........................................................12, 14

*Universal Sav. Bank v. Bankers Standard Ins. Co.*,
    No. B159239, 2004 WL 515952 (Cal. Ct. App. Mar. 17, 2004), *vacated*, No.
    B159239, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004) (unpublished) ........10

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
    114 Cal. App. 4th 548 (2004)..........................................................................9, 12

*Western Fire Ins. Co. v. First Presbyterian Church*,
    437 P.2d 52 (Colo. 1968) .........................................................................1, 11, 12

**STATUTES**

Cal. Civ. Code § 1641 ..........................................................................................14

**OTHER AUTHORITIES**

Cal. Rules of Court, Rule 8.1115 ..........................................................................11

– iv –

1

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 15

https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be ...................................... 10

Local Civil Rule 3-4(e) .......................................................................................... 11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

I.       **INTRODUCTION**

Plaintiff Mudpie, Inc. ("Plaintiff" or "Mudpie") purchased a Travelers insurance policy with an explicit virus exclusion.  After suffering alleged business income and extra expense losses due to the Coronavirus shutdown, Plaintiff now attempts to end-run the Policy's virus exclusion, and asks this Court to force Travelers to reimburse Plaintiff for losses that Travelers never agreed to insure. The Court should reject that request and grant Travelers' motion.

In its Opposition to Travelers' Motion to Dismiss, Plaintiff abandons its claim for Civil Authority coverage—the policy provision that sets forth the only circumstances under which the Policy provides coverage for business income and extra expense losses caused by a governmental order. Plaintiff then tries to create coverage under the Policy's Business Income and Extra Expense provisions with a two-pronged argument:

*First*, Plaintiff attempts to avoid the virus exclusion—which Plaintiff does not dispute applies to the Coronavirus—by arguing that its claimed losses were caused by Governor Newsom's social distancing orders (the "Orders"). This argument fails as a matter of law for at least three reasons: (1) as Plaintiff alleges at great length in the Complaint, the Orders were issued to slow the spread of the Coronavirus, and they cannot be divorced from the reason they were issued; (2) Plaintiff's reliance on the efficient proximate cause doctrine is unavailing; and (3) in addition to the virus exclusion, the Policy also includes an exclusion that precludes coverage for loss or damage caused by a governmental order (apart from a covered claim for Civil Authority coverage, and, again, Plaintiff has abandoned its Civil Authority claim). Thus, even if one were to assume for purposes of argument that the virus exclusion does not apply (which it does), there still would be no coverage, as a matter of law.

*Second*, Plaintiff argues that it suffered "direct physical loss of or damage to property at the described premises," even though there is no allegation that any of its business personal property (or the building in which it rents space) was damaged or physically lost (such as a theft). To the contrary, Plaintiff's property (its inventory of children's toys, clothes, etc. and its business equipment) is right where it was when the Orders were issued to slow the spread of the COVID-19 virus. Nothing is alleged to have happened to the building in which Plaintiff rents

– 1 –

1   space. Plaintiff has failed to allege any "direct physical loss of or damage to property" within

2   the ordinary meaning of those words and applicable California law. Plaintiff's allegations

3   seeking Business Income and Extra Expense coverage thus fail as a matter of law for that

4   reason, in addition to the applicable exclusions.

5        The Court should dismiss the Complaint with prejudice. Given the nature of Plaintiff's

6   alleged losses and the express terms of the Policy, Plaintiff has not and cannot state a claim.

7   Plaintiff's Opposition does not identify any new facts that it could allege if given leave to

8   amend, and thus dismissal with prejudice is warranted.  *See Gardner v. Martino*, 563 F.3d 981,

9   990 (9th Cir. 2009) (no abuse of discretion in denying leave to amend when amendment would

10  be futile); *Torres v. Nationstar Mortg. LLC*, No. EDCV 16-302-JFW (SPx), 2016 WL

11  10988576, at *2 (C.D. Cal. Apr. 8, 2016) (dismissing case with prejudice when plaintiff "failed

12  to allege any facts in his Opposition that indicate[d] leave to amend would not be futile").

13  **II.**    **ARGUMENT**

14        **A.**    **Plaintiff Has Abandoned Its Claim for Civil Authority Coverage**

15        The Civil Authority provision is the only provision in the Policy that potentially provides

16  coverage (as specifically provided for therein) for a business income or extra expense loss

17  caused by a governmental order. Plaintiff's Complaint focused heavily on Governor Newsom's

18  Orders issued to slow the spread of COVID-19, Compl., ¶¶ 24, 25, 27, and the Complaint

19  expressly sought coverage under the Policy's Civil Authority provision. Compl. ¶¶ 30, 33, 60

20  (alleging that Plaintiff's losses "are insured losses under several provisions of [the Policy]

21  including . . . coverage for civil authority orders"). Accordingly, Travelers' Memorandum in

22  Support of its Motion to Dismiss addressed, among other coverages, the Civil Authority

23  coverage, explaining how the facts alleged demonstrated as a matter of law that coverage does

24  not exist under the Civil Authority provision for two reasons. First, the governmental orders

25  were not "caused by or resulting from a Covered Cause of Loss," but rather were caused by a

26  virus, an expressly excluded cause of loss. Doc. 11, at 8-10.[1] Second, the Complaint failed to

27

28  _____

[1] Documents previously filed on ECF are cited to herein by the document number (Doc.) and page number assigned by the Court's ECF system at the top of each page.

– 2 –

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

allege facts demonstrating that the Orders were "due to direct physical loss of or damage to property," an express requirement for Civil Authority coverage. *Id*. at 10-12. In response to Travelers' brief, Mudpie has abandoned its allegations seeking Civil Authority coverage, erroneously suggesting that Travelers "misdirects the Court" to the Civil Authority provision, and stating that "[n]one of Mudpie's claims seek recovery specifically under the civil authority provision . . . ." Doc. 19, at 7, 11. Given Mudpie's express statement that it is not seeking Civil Authority coverage, and its complete failure to demonstrate that it has alleged a plausible basis for such coverage, its allegations seeking such coverage must be dismissed.

**B.** **As a Matter of Law, Plaintiff is Not Entitled to Business Income or Extra Expense Coverage**

Mudpie now rests its entire case on its position that the Business Income and Extra Expense coverages apply. The Business Income provision provides coverage for "actual loss of Business Income . . . due to the necessary 'suspension' of [Plaintiff's] 'operations'" only if (1) the suspension is "caused by direct physical loss of or damage to property at the described premises," and (2) the direct physical loss or damage is "caused by or result[s] from a Covered Cause of Loss." Doc. 11-2, at 71-72. The Extra Expense coverage similarly requires "direct physical loss of or damage to property caused by or resulting from a Covered Cause of Loss." *Id.* at 72.

Mudpie argues that it sustained a "direct physical loss of Mudpie's insured property" when "government closure orders made its property unavailable to be occupied or operated, and therefore unfit for retail sales . . . ." Doc. 19, at 14. Mudpie's theory of coverage fails as a matter of law, for two reasons: (1) Mudpie's claimed loss was caused by a virus, which is an expressly excluded cause of loss, not a Covered Cause of Loss (and to the extent Mudpie points to the Orders as a separate cause of loss, that is also an excluded cause of loss); and (2) the facts alleged do not constitute "direct physical loss of . . . property" as a matter of law.

1. Plaintiff's Business Income and Extra Expense Claims Are Barred by the Virus Exclusion (and also by the Acts or Decisions Exclusion)

— 3 —

Both the Business Income and Extra Expense provisions require "direct physical loss of or damage to property" that is "*caused by or result[s] from a Covered Cause of Loss*." Doc. 11-2, at 72-73 (emphasis added). The Policy contains an express virus exclusion that applies to all property coverages, including the Business Income and Extra Expense coverages. *See* Doc. 11-2, at 218 ("We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"; exclusion applies to, among other policy forms, "forms or endorsements that cover business income, extra expense, rental value or action of civil authority"). Mudpie does not and cannot dispute that the Coronavirus constitutes a "virus" within the meaning of the Policy's virus exclusion. Mudpie also does not and cannot dispute that the Coronavirus is not a "Covered Cause of Loss" under the Policy. Instead, Mudpie seeks to end-run the virus exclusion with sophistry, arguing that its claimed losses stem from the Orders, and not from the Coronavirus. Doc. 19, at 8.

Mudpie's reliance on the Orders to avoid the Coronavirus as the cause of its claimed losses fails as a matter of law. Mudpie's own allegations demonstrate that the Orders are inextricably intertwined with the reason they were issued: the Coronavirus. *See*, *e.g.*, Compl. ¶ 24 (public health officials determined "social distancing – was needed to stop the transmission of COVID-19"; "shops" and other businesses "were likely to become hot-spots for local transmission of COVID-19"); *id.* ¶¶ 24-25 (Orders issued "to control the spread of COVID-19"). Indeed, in its Opposition, Mudpie acknowledges that Mudpie "was forced to suspend its business operations" because "the *risk of viral spread* at a rate that would overwhelm California's healthcare system was deemed too substantial to allow in-person gatherings . . . at certain retail stores." Doc. 19, at 10 (emphasis added). Moreover, the virus exclusion expressly applies to the Business Income and Extra Expense coverages. Doc. 11-2, at 218. A virus cannot, in and of itself, close a business; rather, some form of human intervention (such as by government order or business decision) is obviously required whenever a virus causes a business income or extra expense loss. To adopt Mudpie's theory that the Orders, divorced from their purpose, constitute a Covered Cause of Loss not only would fly in the face of Mudpie's

– 4 –

express allegations regarding the Orders, it would render the virus exclusion nugatory, "strain[]
reason," and require "precisely the opposite" of the plain language of the virus exclusion, which
unambiguously precludes coverage for any loss, including a business income or extra expense
loss, "caused by or resulting from" a virus.  *See Atlas Assurance Co. v. McCombs Corp.*, 146
Cal. App. 3d 135, 149 (1983). Such a result would effectively "rewrite" the Policy and
improperly bind Travelers "to a risk that it did not contemplate and for which it has not been
paid."  *Id.* (quotation marks omitted).

Furthermore, Mudpie's focus on California's efficient proximate cause doctrine is
misplaced for several reasons. ***First***, where an exclusion "plainly and precisely communicate[s]
an excluded risk," California courts do not apply the efficient proximate cause doctrine. *See De
Bruyn v. Superior Court*, 158 Cal. App. 4th 1213, 1224 (2008) (finding efficient proximate
cause doctrine inapplicable where "the policy makes clear that mold damage caused by a sudden
and accidental release of water is an excluded peril"). The virus exclusion specifically applies to
business income and extra expense losses, and to "loss or damage caused by or resulting from
any virus . . . ." Doc. 11-2, at 218. The virus exclusion plainly communicates that if humans
close a business because of a virus, the business income and extra expense losses resulting
therefrom are not covered.

***Second***, the efficient proximate cause is the "predominant, or most important cause of a
loss," *Julian v. Hartford Und. Ins. Co.*, 35 Cal. 4th 747, 754 (2005) (citing *Garvey v. State Farm
Fire & Cas. Co.*, 48 Cal. 3d 395, 403, 406 (1989)), and there can be no reasonable dispute that
the virus was the predominant, and in fact sole cause of Mudpie's loss. Mudpie's own
allegations confirm that its store was closed "to control the spread of COVID-19," because
"shops," among other locations, "were likely to become hot-spots for local transmission of
COVID-19." Compl. ¶¶ 22, 24. The "Factual Background" section of the Complaint makes
clear that Mudpie's claims are premised on the COVID-19 virus, *id.* ¶¶ 17-25, as does the
summary of facts in the Opposition. Doc. 19, at 9-10. Mudpie cannot avoid the application of
the virus exclusion by recharacterizing its loss as being caused by Orders that were issued to
slow the spread of the virus rather than being caused by the virus. *Chadwick v. Fire Ins. Exch.*,

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

1   17 Cal. App. 4th 1112, 1117 (1993) (where "the loss was in fact occasioned by only a single

2   cause, albeit one susceptible to various characterizations, the efficient proximate cause analysis

3   has no application" because "[a]n insured may not avoid a contractual exclusion merely by

4   affixing an additional label or separate characterization to the act or event causing the loss").

5          ***Finally***, what Mudpie maintains is the predominant cause of its loss—the Orders, *see*

6   Doc. 19, at 21—is a separately *excluded* cause of loss, and therefore the efficient proximate

7   cause doctrine does not apply. *Brown v. Mid-Century Ins. Co.*, 215 Cal. App. 4th 841, 855

8   (2013) (efficient proximate cause doctrine did not apply where "[t]here are only two excluded

9   risks"); *Brodkin v. State Farm Fire & Cas. Co.*, 217 Cal. App. 3d 210, 217 (1989) (efficient

10  proximate cause doctrine irrelevant "if all of the alleged causes of the loss are excluded under

11  the policy"); *Sapiro v. Encompass Ins.*, No. C 03-4587 MHP, 2004 WL 2496090, at *4 (N.D.

12  Cal. Nov. 2, 2004) (granting motion to dismiss, explaining that efficient proximate cause

13  doctrine does not apply if both alleged causes of loss are excluded). The Policy excludes "loss

14  or damage caused by or resulting from . . . *Acts or decisions*, including the failure to act or

15  decide, *of any* person, group, organization or *governmental body*." Doc. 11-2, at 96 (emphasis

16  added).[2] Courts applying California law have repeatedly held that similarly-worded Acts or

17  Decisions exclusions are unambiguous and bar coverage for loss or damage caused by an act or

18  omission of any person, governmental body or organization. *See Jernigan v. Nationwide Mut.*

19  *Ins. Co.*, No. C 04-5327 PJH, 2006 WL 463521, at *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or

20  Decisions exclusion applied to loss caused by, among other acts or decisions, a town's "stop-

21  work order"); *Stephens v. Liberty Mut.*, No. C 05-0213 PJH, 2008 WL 480287, at *21 (N.D.

22  Cal. Feb. 19, 2008) (finding that Acts or Decisions exclusion "logically includes 'acts or

23  decisions' of third parties" and bars coverage for physical damage to building caused by actions

24  of contractor); *Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.*, No. C-05-1315 MHP,

25  2006 WL 2130743, at *11 (N.D. Cal. July 27, 2006), *aff'd*, 291 F. App'x 807 (9th Cir. 2008)

26

27  _____

28  [2] The Acts or Decisions exclusion does not preclude Civil Authority coverage when the specific prerequisites for that coverage are satisfied. As discussed above, Mudpie has abandoned any claim for Civil Authority coverage, and has not and cannot allege the prerequisites for such coverage.

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

1  (applying Acts or Decisions exclusion and noting that "third party actions are also specifically

2  excluded under the terms of the current policy"); *see also Cytopath Biopsy Lab., Inc. v. U.S.*

3  *Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (acts or decisions exclusion

4  barred coverage where "the real losses claimed herein resulted from refusal by the authorities to

5  permit resumption of operations").

6        Mudpie incorrectly maintains that Travelers has "waived" reliance on any exclusions

7  other than the virus exclusion because it only mentioned other exclusions in a footnote in its

8  moving brief. Doc. 19, at 23. As this Court has explained, arguments are "not new" when, as

9  here, "[t]hey are a direct response to the arguments in [plaintiff's] opposition." *Celgard, LLC v.*

10  *Shenzhen Senior Tech. Material Co. (US) Research Inst.*, No. 19-CV-05784-JST, 2020 WL

11  1548513, at *4 n.9 (N.D. Cal. Mar. 5, 2020); *see also Perez-Farias v. Glob. Horizons, Inc.*, No.

12  CV-05-3061-RHW, 2009 WL 10690337, at *1 (E.D. Wash. Nov. 12, 2009) ("new arguments

13  that are a reasonable response to points made in the non-moving parties' response are

14  appropriate").[3] Mudpie's Complaint failed to offer any explanation for why it maintained that

15  the virus exclusion, which was cited in Travelers' letter denying Mudpie's insurance claim, did

16  not apply, Compl. ¶¶ 61, 68, and the Complaint made no mention of the efficient proximate

17  cause doctrine. Travelers was not required in its moving brief to anticipate every argument that

18  Mudpie might make in opposition to its motion to dismiss, including that Mudpie would argue

19  that the Orders were the efficient proximate cause of the loss notwithstanding that losses caused

20  by acts or decisions of a governmental body are separately and expressly excluded.

21

22

---

23  [3] The cases cited by Plaintiff in support of its waiver argument are inapposite. *Holley v. Gilead
Sciences, Inc.*, 379 F. Supp. 3d 809, 834 (N.D. Cal. 2019) (request for a more definite statement

24  under Fed. R. Civ. P. 12(e) was made only in a footnote and also denied on the merits); *Estate of
Saunders v. Comm'r*, 745 F.3d 953, 962 n.8 (9th Cir. 2014) (appellant on appeal raised

25  argument about lower court's failure to follow rules of court only in a footnote); *City of
Emeryville v. Robinson*, 621 F.3d 1251, 1262 n.10 (9th Cir. 2010) (appellant on appeal did not

26  adequately raise an appellate issue by noting it in a footnote); *Sanders v. Sodexo, Inc.*, No. 2:15-
CV-00371-JAD, 2015 WL 4477697, at *4 (D. Nev. July 20, 2015) (defendants noted in footnote

27  that they were not properly named as defendants but did not move to dismiss on that ground).
Even in the appellate context, "new" arguments may be made in a reply brief if they "were a

28  reasonable response to points made in the . . . answering brief." *Am. Civil Liberties Union of
Nevada v. City of Las Vegas*, 333 F.3d 1092, 1106 n.14 (9th Cir. 2003).

2.   <u>Plaintiff's Argument That It Has Purportedly Sustained a "Direct Physical Loss of . . . Property" Fails as a Matter of Law</u>

Mudpie maintains that it "was forced to suspend its business operations because of [government] restrictions on in-person gatherings at non-essential businesses," and that this constituted a "direct physical loss of Mudpie's insured property" within the meaning of the Policy because the order "made its property unavailable to be occupied or operated, and therefore unfit for retail sales . . . ." Doc. 19, at 10, 14. But no property was lost—such as if it were stolen, disappeared without explanation, or was blown away in a tornado. Mudpie suggests that it "pleads a loss of its tangible, physical storefront," Doc. 19, at 14, but it does not plead that anything happened to its storefront. There was no break-in or windstorm or fire. Rather, in support of its allegation that it purportedly sustained a "physical loss" of its "storefront," Mudpie cites an allegation that "[a]s a result of this mandate [referring to the Orders]," it purportedly lost the "functionality" of its property "and/or [it] became useless or uninhabitable, resulting in substantial loss of business income." Compl. ¶ 59. Based on the facts alleged, however, this is purely an economic loss. Mudpie's inventory of children's clothing, toys, books, and other items, Compl. ¶ 26, is in the exact same physical condition it was in when the Orders took effect. Nothing physical is alleged to have happened to Mudpie's property, or the building where it rents space. There was no "direct physical loss of or damage to property at the described premises" within any reasonable meaning of those words.

Instead, what Mudpie has alleged is a *financial* loss in the absence of any *physical* loss of or damage to property. Its claim is analogous to *Doyle v. Fireman's Fund Ins. Co.*, 21 Cal. App. 5th 33 (2018), for example, in which a wine collector attempted to recover under a property insurance policy for counterfeit wine he was sold by a fraudster who had filled empty wine bottles with wine that was not rare or vintage and attached fraudulent labels to the bottles. *Id.* at 36. As the Court of Appeal explained, the insured "has not pleaded a breach of contract claim that can be proven at trial because nothing happened *to the covered property* (i.e., the wine that [the insured] purchased and insured)." *Id.* at 38 (emphasis in original). The policy only insured "against potential harms to the wine itself, such as fire, theft, or abnormal spoilage; [the

– 8 –

1   insured] did not insure himself against any potential losses," rather, he "bought a *property*

2   *insurance policy.*" *Id.* at 39 (emphasis in original). Similarly here, nothing happened to the

3   covered property, i.e., Mudpie's inventory and equipment, and nothing happened to the building

4   in which Mudpie rented space. Nothing was lost, stolen, disappeared or damaged. What Mudpie

5   suffered is a purely financial loss that did not result from any physical loss of or damage to

6   property, and is not covered by the Policy. *See also Ward Gen. Ins. Servs., Inc. v. Employers*

7   *Fire Ins. Co.*, 114 Cal. App. 4th 548, 556 (2004) (holding that "the loss of [a] database, with its

8   consequent economic loss, but with no loss of or damage to tangible property, was not a 'direct

9   physical loss of or damage to' covered property," and therefore not covered); *Commercial*

10  *Union Ins. Co. v. Sponholz*, 866 F.2d 1162, 1163 (9th Cir. 1989) (applying California law,

11  agreeing with Washington Court of Appeals that defective title to a vessel was not "physical

12  loss or damage").

13          No court has ever held that such a financial loss as a result of a government-ordered

14  closure is a "direct physical loss of . . . property." To the contrary, courts have consistently

15  rejected Plaintiff's theory that a temporary loss of use of property—in and of itself—constitutes

16  a "direct physical loss of . . . property" under a property insurance policy. *See*, *e.g.*, *Pentair, Inc.*

17  *v. Am. Guarantee & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) (rejecting insured's

18  position because "if adopted, [it] would mean that direct physical loss or damage is established

19  *whenever* property cannot be used for its intended purpose"); *Northeast Georgia Heart Ctr.,*

20  *P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ("The court will

21  not expand 'direct physical loss' to include loss-of-use damages when the property has not been

22  physically impacted in some way. To do so would be equivalent to erasing the words 'direct'

23  and 'physical' from the policy."); *J. O. Emmerich & Assocs., Inc. v. State Auto Ins. Cos.*, No.

24  3:06CV00722-DPJ-JCS, 2007 WL 9775576, at *5 (S.D. Miss. Nov. 19, 2007) (same result); *see*

25  *also Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Co.,* S.E.2d 249, 250-51 (N.C. Ct.

26  App. 1997) (inability to access insured car dealership due to snowstorm did not give rise to a

27  covered business income loss).

28

– 9 –

1    Consistent with all of these prior decisions, in the first decision to address this issue in a

2  COVID-19 case, a Michigan Circuit Court judge recently granted the equivalent of a motion to

3  dismiss, ruling from the bench that there were "no allegations of direct physical loss of or

4  damage to property" under the policy because that "has to be something with material

5  existence," "something that alters the physical integrity of the property." The judge further

6  stated that "it seems like the plaintiff is saying the physical requirement is met because people

7  were physically restricted from dine-in services [at the plaintiffs' restaurants], but that argument

8  is just simply nonsense and it comes nowhere close to meeting the requirement that there has to

9  be some physical alteration to or physical damage or tangible damage." *Gavrildes Mgmt. Co. v.*

10  *Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020).[4]

11    ### 3.    Plaintiff Relies on Inapposite Cases

12    Mudpie's heavy reliance on *Total Intermodal Servs. Inc. v. Travelers Prop. Cas. Co. of*

13  *Am.*, Case No. CV17-04908AB(KSx), 2018 WL 3829767 (C.D. Cal. July 11, 2018) is

14  misplaced. In that case, cargo was lost when a container was mistakenly marked as "empty,"

15  and thus mistakenly shipped to China and held by Chinese customs authorities who refused to

16  release it for months. *Id.* at *1. Ultimately, rather than continue to incur fees, the insured's

17  customer decided to have the container destroyed. *Id.* The insured argued that the property was

18  "in effect lost" because it was "unrecoverable from China." *Id.* at *3. The court held that "the

19  '*loss of*' property contemplates that the property is **misplaced and unrecoverable**, without

20  regard to whether it was damaged," and that "the phrase 'loss of' includes the **permanent**

21  **dispossession** of something." *Id.* (italics in original; bold added); *see also Universal Sav. Bank*

22  *v. Bankers Standard Ins. Co.*, No. B159239, 2004 WL 515952, at *1, *6 (Cal. Ct. App. Mar. 17,

23  2004), *vacated*, No. B159239, 2004 WL 3016644 (Cal. Ct. App. Dec. 30, 2004) (unpublished)

24  (holding that, when personal property that bank was relying upon as collateral went missing,

25

26  ─────────────────

27  [4] While an official transcript is not yet available, the proceeding was conducted remotely, and
   the court made the video of the proceeding available on YouTube at
   https://www.youtube.com/watch?v=Dsy4pA5NoPw&feature=youtu.be.  The oral decision

28  begins at minute 23:18 and the portions quoted above are at approximately 23:55-26:06 and
   27:30-28:04. Travelers will provide the court with the official transcript promptly after it
   becomes available.

1   that was a "physical loss" of the property).[5] Here, in contrast, none of Mudpie's property has

2   been misplaced or is unrecoverable, nor has Mudpie been permanently dispossessed of any

3   property. No property has been lost. What Mudpie alleges is a *financial* loss from being required

4   to close its store temporarily to slow the person-to-person spread of a virus.

5         Mudpie also cites cases that are readily distinguishable on the basis that there was either

6   a physical impact or physical manifestation at the insured property that allegedly made the

7   premises uninhabitable or entirely unusable. *See, e.g. Western Fire Ins. Co. v. First*

8   *Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (gasoline had accumulated in the soil around the

9   insured building, infiltrating and saturating the foundation and making the structure

10  uninhabitable); *Murray v. State Farm Fire & Cas. Co.*, 509 S.E.2d 1, 4, 16–17 (W. Va. 1998)

11  (insured home was damaged by rocks falling from an adjacent highwall, which became

12  unstable, rendering the home uninhabitable)[6]; *Manpower Inc. v. Ins. Co. of the State of Pa.*, No.

13  08C0085, 2009 WL 3738099, at *5 (E.D. Wis. Nov. 3, 2009) (insured rented space in office

14  building that sustained a collapse, and insured was unable to retrieve its business personal

15  property); *Gregory Packaging, Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 2:12-CV-04418

16  WHW, 2014 WL 6675934, at *2 (D.N.J. Nov. 25, 2014) (ammonia was released into insured

17  building, requiring evacuation and extensive remediation).[7] In each of these cases, unlike here,

18  there was found to be a pervasive, *physical* impact on the insured property. As one case cited by

19  Mudpie summarized this line of cases, they all involved circumstances "where the building in

20

21  [5] Plaintiff cites the *Universal Savings Bank* opinion notwithstanding that it may *not* be cited
under Cal. Rules of Court, Rule 8.1115 and Local Civil Rule 3-4(e) of this Court. *See Sarmiento*

22  *v. Sealy, Inc.*, No. 18-CV-01990-JST, 2019 WL 3059932, at *6 n.7 (N.D. Cal. July 12, 2019).

23  [6] *Murray* relied on a California decision in which a similar severe physical event occurred
adjacent to the insured structure. *Hughes v. Potomac Ins. Co.*, 199 Cal. App. 2d 239, 249 (1962)

24  ("It goes without question that respondents' 'dwelling building' suffered real and severe damage
when the soil beneath it slid away and left it overhanging a 30-foot cliff. Until such damage was

25  repaired and the land beneath the building stabilized, the structure could scarcely be considered
a 'dwelling building' in the sense that rational persons would be content to reside there.").

26

27  [7] Mudpie also cites *Dundee Mut. Ins. Co. v. Marifjeren*, 587 N.W.2d 191 (N.D. 1998), but that
court declined to address whether there was "direct physical loss" under the main policy form,
instead relying the case on an endorsement, concluding that where winds from a blizzard

28  damaged power lines servicing the insured storage facility, that constituted "wind damage"
within the meaning of the endorsement. *Id.* at 194.

– 11 –

1   question has been rendered unusable *by physical forces*." *Travco Ins. Co. v. Ward*, 715 F. Supp.

2   2d 699, 708 (E.D. Va. 2010) (emphasis added).

3       In *Western Fire*, for example, the court recognized that "*[i]t is perhaps quite true that

4   the so-called 'loss of use' of the church premises, standing alone, does not in and of itself

5   constitute a 'direct physical loss,'*" but concluded that the accumulation of gasoline around and

6   under the church building was a "direct physical loss" because it was distinctly different from a

7   mere loss of use not caused by a physical impact. *Western Fire*, 437 P.2d at 55 (emphasis

8   added). As a California Court of Appeal explained, *Western Fire* "does not stand for the

9   proposition that loss of intangible property can constitute a physical loss"; rather, "[a] physical

10  loss occurred when the foundations became saturated with gasoline." *Ward Gen. Ins. Servs.*, 114

11  Cal. App. 4th at 558 (emphasis in original). Here, in contrast, Plaintiff's claimed "loss of use"

12  does not involve any physical impact or manifestation at the insured premises.

13          4.   <u>Plaintiff's Proposed Interpretation of the Policy is Contrary to Basic
             Rules of Insurance Policy Interpretation</u>

14

15      Mudpie's position is contrary to the fundamental rule that where "the meaning of the

16  policy term is clear from the context of the policy as a whole, no ambiguity exists," *Palmer v.

17  Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999), in several respects. *First*, when the Policy

18  covers a Business Income or Extra Expense loss, the time period for such coverage is the

19  "period of restoration," Doc. 11-2, at 72-73, which ends on "[t]he date when the property at the

20  described premises should be *repaired, rebuilt or replaced* with reasonable speed and similar

21  quality . . . ." *Id.* at 107 (emphasis added). Courts have repeatedly looked to the definition of

22  "period of restoration" in concluding that "direct physical loss of or damage to property"

23  requires repairable or replaceable loss or damage. *See, e.g.*, *Newman Myers Kreines Gross

24  Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 332 (S.D.N.Y. 2014) ("The words 'repair'

25  and 'replace' [in the policy's definition of 'period of restoration'] contemplate physical damage

26  to the insured premises as opposed to loss of use of it").[8] Where there is physical loss (such as a

27

28  [8] *See also Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 287 (S.D.N.Y.
    2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by
    the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at 251 (reaching same

– 12 –

theft), the item can be replaced. Here, Mudpie's claimed loss cannot be "repaired, rebuilt or replaced." Rather, what needs to happen for its loss to end is not for any repairs or replacement to be made, but merely for government officials to declare that "social distancing" is no longer necessary to the same extent and allow customers to resume visiting Mudpie's store.

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion for a bare loss of use, stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use or loss of market." Doc. 11-2, at 94. *See, e.g.*, *Schneider Equip., Inc. v. Travelers Indem. Co. of Illinois*, No. CIV. 04-1482-HA, 2006 WL 2850465, at *1, *5-6 (D. Or. Sept. 29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).[9]

*Third*, Mudpie's position would render the Civil Authority provision superfluous. If, as Mudpie contends, a governmental order requiring closure of the insured premises to the public were to constitute "direct physical loss of or damage to property at [the insured] premises," the Civil Authority provision, which is an "Additional Coverage" that extends the scope of the Business Income and Extra Expense coverages, would serve no purpose. If Mudpie's position were adopted, any "action of civil authority that prohibits access to the described premises" within the meaning of the Civil Authority provision (Doc. 11-2, at 85) would constitute "direct physical loss of or damage to property at the described premises," thereby triggering the Business Income and Extra Expense coverages. Thus, there would be no reason for the Policy to include the "Additional Coverage" for Civil Authority, which is limited to a maximum period of three consecutive weeks (as opposed to Business Income coverage, which has a maximum time period of one year). The Policy cannot be interpreted in a manner that renders the Civil

---

conclusion); *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4, 8 (N.Y. App. Div. 2002) (reaching similar conclusion).

[9] Of course, when a covered cause of loss, such as a fire, results in physical loss of or damage to property and that causes a suspension of operations, the "loss of use" exclusion does not apply because the cause of the loss is the fire.

1   Authority coverage subsumed by the Business Income and Extra Expense coverages. *See Titan*

2   *Corp. v. Aetna Cas. & Sur. Co.,* 22 Cal. App. 4th 457, 473–74 (1994) ("We interpret contracts

3   (including insurance policies) as a whole, with each clause lending meaning to the others," and

4   "in a manner which gives force and effect to every clause rather than to one which renders

5   clauses nugatory."); *see also* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken

6   together, so as to give effect to every part, if reasonably practicable, each clause helping to

7   interpret the other.").

8       Mudpie erroneously relies on a definition of "property damage" that is part of the

9   commercial general liability ("CGL") coverage part of the Policy. Doc. 19, at 14; Doc. 11-2, at

10   33, 142. The CGL coverage part, however, is completely irrelevant to this case. The CGL

11   coverage part provides third-party liability insurance coverage, in certain specified

12   circumstances, where a "suit" is brought by a third party against the insured seeking damages

13   because of "bodily injury" or "property damage" as defined therein. *See* Doc. 11-2, at 14. The

14   Businessowners Property Coverage Special Form is the part of the Policy relevant to this case. It

15   provides first-party property insurance coverage primarily for "direct physical loss of or damage

16   to Covered Property," along with other additional coverages such as Business Income, Extra

17   Expense and Civil Authority. The Businessowners Property Coverage Special Form explains on

18   its first page that defined terms are used in quotation marks, and are defined in Section G of that

19   policy form, which does not include a definition of "property damage." Doc. 11-2, at 71, 105-

20   09. Moreover, the term "property damage," in quotations or otherwise, is not used in the

21   Businessowners Property Coverage Form.[10] Mudpie's reliance on the "property damage"

22   definition in the CGL coverage part, which is wholly inapplicable to the property coverage

23   forms, is completely irrelevant and misplaced.

24

25

---

26   [10] To the extent that Mudpie cites *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699, 708-09 (E.D.
     Va. 2010), the court was interpreting a homeowners policy that included both first-party
27   property coverage for the dwelling and third-party liability insurance (for certain claims made
     by third parties against the insured), all within the same policy form. The court failed to
28   appreciate that the defined term "property damage" was used only in the third-party liability
     insurance section of the policy form at issue.

DEFENDANT TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA'S REPLY
MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS: CASE NO.: 4:20-CV-03213-JST

1

**C.      Plaintiff Does Not Dispute That Its Entire Complaint Fails if it Has Not Pled a Plausible Claim for Business Income or Extra Expense Coverage**

2

3      Travelers' moving papers established that if Plaintiff failed to plead facts that, if proven,

4  would plausibly establish its entitlement to coverage under the Policy, all three of Plaintiff's

5  causes of action should be dismissed, and the putative class action allegations also must be

6  dismissed. Doc. 11, at 24-27. In its opposition, Mudpie maintains only that it has pled a

7  plausible claim under the Business Income and Extra Expense coverages. Doc. 19, at 13-25.

8  Mudpie fails to dispute Travelers' arguments that if Mudpie has failed to plead a claim for

9  coverage under the Policy, all of its causes of action fail. Accordingly, if the Court agrees with

10  Travelers' position that Mudpie has failed to plead entitlement to Business Income and Extra

11  Expense coverages, the entire Complaint fails and should be dismissed, with prejudice.

12  **III.      CONCLUSION**

13      For all of the reasons stated above, in addition to those stated in Travelers'

14  Memorandum of Points and Authorities in Support of its Motion to Dismiss, Mudpie has failed

15  to state any claim upon which relief must be granted. To the extent Mudpie makes a half-hearted

16  request leave to amend in the final sentence of its Opposition, it fails to identify any facts that it

17  could allege in an amended complaint. Thus, Travelers respectfully requests that the Court

18  dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). *See*

19  *Gardner*, 563 F.3d at, 990 (no abuse of discretion in denying leave to amend when amendment

20  would be futile); *Torres*, 2016 WL 10988576, at *2 (dismissing case with prejudice when

21  plaintiff "failed to allege any facts in his Opposition that indicate[d] leave to amend would not

22  be futile").

23      DATED:  July 8, 2020

24                                      BULLIVANT HOUSER BAILEY PC

25                                      By  */s/ Andrew B. Downs*

26                                          Andrew B. Downs
                                            Linda B. Oliver
27                                          Attorneys for Defendant Travelers Casualty
                                            Insurance Company of America
28

– 15 –

## STATEMENT IN LIEU OF CERTIFICATE OF SERVICE

This document will be served via the Court's CM/ECF system, thus filing counsel is unable to certify at this time that service has occurred.  Should the CM/ECF e-file notice report any failures in electronic service, counsel will serve this document by another means and will file a supplemental Certificate of Service.